STATE OF NEBRASKA, APPELLEE, V. DALE BOWERSMITH, APPELLANT.
395 N.W.2d 527

Filed October 31, 1986.    No. 85-836.

Douglas Veith of Pelton, Bertolini, Schroeder, Veith and O'Neal, for appellant.

Robert M. Spire, Attorney General, and Bernard L. Packett, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant, Dale Bowersmith, was convicted, after jury trial, on three counts of sexual assault of a child, in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 1985). He was sentenced to imprisonment of 2 to 3 years on each count, with the sentences to be served concurrently. Defendant appeals, assigning error in the trial court's failure to sustain defendant's motion to suppress statements of Daniel Scott, an investigator for the Nebraska State Patrol. Defendant alleges the testimony of investigator Scott concerned statements made by the defendant during custodial interrogation in which proper rights advisements and *Miranda* warnings were not given and that the statements were elicited as a result of improper influence. For the reasons hereinafter stated we affirm.

The record shows the following. On September 16, 1984, Daniel Scott, an investigator for the Nebraska State Patrol, was requested by the Nebraska City police chief to investigate the sexual molestations of two minor children. Scott was informed during his interview of the complainants (the mothers of the children involved) that defendant was the individual who molested the children. At the hearing on the motion to suppress, investigator Scott testified that, while he had made no judgment as to the guilt of the defendant, he knew he would have to speak with him concerning the allegations.

Scott, in plain clothes, drove in an unmarked car to defendant's home. Upon arriving there Scott was greeted by defendant's wife. Scott identified himself as a police officer and asked to speak with the defendant. Scott waited at the door until the defendant joined him. Since it was cold outside, the

two men decided to talk in Scott's car. The defendant voluntarily joined Scott in Scott's unmarked police car, which was in front of the Bowersmith residence. The car was moved to the side of the residence, where the two men spoke for approximately 5 minutes. The defendant was advised of the allegations made against him. At this point the defendant indicated a desire to talk elsewhere, so he was driven to another location. The defendant and Scott remained at this location for approximately 35 minutes before defendant was driven home.

Scott testified that during their conversation he advised the defendant of the allegations. Furthermore, the defendant was advised that he did not have to talk to Scott, that he was not in custody, that Scott was not there to arrest him, that he had a right to call his attorney, and that he could quit talking at any time and Scott would drive him home.

The defendant testified that he did not feel that he could get out and leave anytime he wanted. Furthermore, he testified Scott asked him to admit to the allegations.

The following day, an officer of the Nebraska City Police Department arrested the defendant and brought him to the courthouse. Investigator Scott then told the defendant he wanted to speak with him concerning the allegations. Scott then fully advised the defendant of his *Miranda* rights. Defendant would not waive these rights, nor would he give a statement.

The defendant argues that investigator Scott's interview in the car on September 16, 1984, was a custodial interrogation. Furthermore, defendant argues the scope of questioning was accusatory rather than investigatory. The U.S. Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), forbids the prosecution from introducing defendant's statements stemming from "custodial interrogation" unless the proper rights advisement has been given. The Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or *otherwise deprived of his freedom of action in any significant way*." (Emphasis supplied.) 384 U.S. at 444. This court in *State v. Saylor*, 223 Neb. 694, 699, 392 N.W.2d 789, 793 (1986), citing *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983), stated

the ultimate inquiry regarding the custodial status of a suspect " 'is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " The pertinent question for purposes of this appeal is whether the district court erred in holding that at the time of the interview on September 16, 1984, the matter was still in the investigatory stages and that the defendant was not deprived of his freedom in any significant way. Determinations as to whether a person has been seized, in the constitutional sense, are questions of fact. *State v. LaChappell*, 222 Neb. 112, 382 N.W.2d 343 (1986). While there was testimony to the contrary, we hold the evidence was sufficient for the trial court to find the interview was not custodial in nature and the defendant was not deprived of his freedom in any significant way. Investigator Scott testified he advised the defendant that he did not have to talk. It was the defendant's wish to drive to another location to continue the conversation. Scott testified that he told the defendant he would drive him home whenever defendant desired.

The defendant also argues his statements were solicited through improper coercion or inducement. This court has held that to be admissible as evidence in his trial, an accused's statements must have been voluntarily made and must not have been the product of any inducement, no matter how slight. *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986).

The defendant relies on the holding in *State v. Erks*, 214 Neb. 302, 333 N.W.2d 776 (1983), a single-judge opinion. In *Erks*, Judge Boslaugh affirmed the district court's sustaining of Erks' motion to suppress certain statements made in response to an offer by the interrogator to provide help for the defendant and avoid unnecessary embarrassment for the family. It was held in *Erks* that such offers of help constituted sufficient evidence to support the trial court's finding that statements made after the inducement were not voluntary.

The defendant in the case at bar alleges investigator Scott solicited a confession by discussing the effects the allegations of sexual assault would have on the defendant's wife. The evidence in the case at bar, however, shows that Scott did not offer any inducements to defendant with regard to defendant's wife. Instead, defendant testified as follows: "Q- [Defendant's

10

counsel] Did he [investigator Scott] talk to you about your wife and what effect this would have on your wife? A- I did." Investigator Scott testified, on this issue of coercion or inducement, that after defendant expressed concern about his wife, Scott told defendant "that if something like this was happening, that if his wife truly cared about him, that she'd understand and they'd work it out." Such statements fall far short of the inducement offered in *State v. Erks, supra,* and clearly constituted sufficient evidence on which the court could determine that no inducement had been offered defendant, and to support the trial court's finding that defendant's statements were voluntary and admissible. In considering such evidence we are bound by the rule that this court will not overturn the trial court's factual findings when determining the correctness of the trial court's rulings on the suppression of evidence unless those findings are clearly wrong. *State v. LaChappell, supra.* The trial court's findings are not clearly wrong and, indeed, are fully supported by the evidence.

AFFIRMED.