STATE OF NEBRASKA, APPELLEE, V. JEFFREY L. HAYES, APPELLANT.
424 N.W.2d 624

Filed June 24, 1988.   No. 87-835.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Robert M. Spire, Attorney General, and Janie C. Castaneda, Special Assistant Attorney General, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Following a bench trial, defendant, Jeffrey L. Hayes, was adjudged guilty of first degree assault in violation of Neb. Rev. Stat. § 28-308 (Reissue 1985), which prohibits the intentional or knowing causing of "serious bodily injury" to another. Following the imposition of the sentence, Hayes perfected this appeal. His sole assignment of error rests on the trial court's failure to suppress his "oral and written statements." Finding the assignment to be without merit, we affirm.

Hayes, who was 19 years old at the time of the crime, is the father of the then 4-month-old child victim. He was living with the child's mother and, because he was unemployed, cared for the child while the mother worked.

On March 17, 1987, Hayes was alone with the child, during which time she suffered first- to third-degree burns on the right side of her body from the ear down to the upper thigh. The injuries, which were potentially fatal, will cause the child to be permanently disfigured.

In the course of the investigation which began at the hospital to which the child had been taken, Omaha Police Officer Bobby Polk asked Hayes and the child's mother to accompany him to the Omaha police station for questioning. Hayes there waived his *Miranda* rights and agreed to talk with police.

Hayes originally told the investigating officers that he did not intentionally burn the victim but that she was accidentally burned while he was giving her a bath. He claimed to have picked up the child by placing both of his hands under her armpits, after which he lowered her feetfirst into the water. After this recitation, the officers told Hayes that they had seen the child and that his description of placing her in the water feetfirst could not be true. The record supports a finding that one officer also told Hayes that the treating physician had said he "needed to know exactly what happened to the child, how the burns occurred," that the physician "suspected that they

were water burns, but he wasn't completely sure whether they were or not. . . . He knew they weren't fire burns, but he didn't know if they were grease or some other type of fluid that was used," and that he said he would like to be contacted if such information were developed. At this point the officers could see an expression of concern come upon Hayes' face.

Polk testified that Hayes then began to talk about the problems he was having with the mother's parents, specifically that her parents wanted to take the child away from them. Hayes then admitted he burned the infant by holding her under the faucet and turning on the water. The officers requested that defendant give a tape-recorded statement, but Hayes refused because he did not want the mother's parents to ever hear such a statement. He agreed, however, to give a written statement.

In that statement Hayes, who is a high school dropout with below normal writing and reading skills, wrote:

I turn on Both knobs and the water came on Hot. I didn't mean to do it attenily [sic] . . . while the water was running both knobs was equally hot water just came out I let the water come - Down on her just for a quit [sic] second If we can't have our little girl they shore can't either.

The statement also recited that Hayes had been thinking about his problems and referred to his concern with the desire of the mother's family to take the child.

At trial, Hayes testified that he ran the bath water in the tub, left the room, and upon returning later, placed the child in the water. Because the water was cool, he turned on the hot water. Although the child was not touched by the running water, she began to cry and "jump around." He then took the child out of the water, wrapped her in a wet towel, and called for a neighbor and for help.

Hayes argues the incriminating oral and written statements he made should have been suppressed because they were induced by the investigator's statement that the treating physician needed to know what happened in order to properly treat the child, and were thus not made freely and voluntarily.

In his brief Hayes reminds us that according to *Culombe v. Connecticut*, 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961), a confession obtained when a defendant's will has been

overborne and his self-determination critically impaired offends due process. In the oral argument made on his behalf we were further reminded that *Rogers v. Richmond*, 365 U.S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961), holds that the test of the voluntariness of a confession rests not upon its probable truth or falsity but on whether the state's behavior through its officers was such as to overturn the defendant's will to resist. There is no question but that to be admissible in evidence, an accused's statement, admission, or confession must have been freely and voluntarily made, and must not have been the product of or extracted by any direct or implied promise or inducement, no matter how slight. *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986). Neither is there any question but that the State bears the burden of proof in a suppression hearing to show by a preponderance of the evidence that an accused's statements were voluntarily made. *State v. Norfolk*, 221 Neb. 810, 381 N.W.2d 120 (1986). However, whether an officer has made a promise for an accused's statement is a question of fact to be determined by the trial court, a decision which will not be set aside unless clearly wrong. *State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782 (1988); *State v. Dixon, supra*. Moreover, in determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the "trier of fact" and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress. *State v. Holman, post* p. 57, 424 N.W.2d 627 (1988); *State v. Boysaw*, 228 Neb. 316, 422 N.W.2d 346 (1988); *State v. Dixon, supra*.

Thus, the inquiry resolves itself into determining whether informing Hayes that the treating physician needed to know what happened so that he might properly treat the child constituted such an inducement to confess that Hayes' statements were thereby rendered involuntary.

This is not a situation such as was presented in *State v. Longmore*, 178 Neb. 509, 134 N.W.2d 66 (1965), wherein a murder confession obtained from the defendant, who had been arrested along with his wife, was held to have been made involuntarily because defendant was misled into thinking his attorney no longer represented him. Defendant also claimed he

had been told that if he did not confess, his wife would be charged; his wife was in fact released upon the making of defendant's confession. Rather, the present situation is more akin to that presented in *State v. Bowersmith*, 224 Neb. 6, 395 N.W.2d 527 (1986), in which we held the evidence supported the trial court's finding that the admissions of sexual assaults on a child were made voluntarily. The defendant in that case complained the confession was the result of the investigator's observation, in response to defendant's expressed concern for the effect the allegations would have on his wife, that if his wife truly cared about defendant, she would understand and " 'they'd work it out.' " *Id.* at 10, 395 N.W.2d at 530. Similarly, in *State v. Dixon, supra*, we held the trial court did not err in finding that an officer's suggestion to the defendant therein that those who told the truth were dealt with less harshly than those who lied did not constitute an improper inducement for defendant's statement.

In this case the import of the investigator's comments to the defendant were that the treating physician needed to know the type of burns involved, not necessarily how or under what circumstances they were inflicted. Hayes could have confirmed that the injuries were water burns without going into the details of how they came about and what he thought as the child was being scalded. Under that set of facts, we cannot say the trial court's conclusion that Hayes' statements were made voluntarily and freely is clearly wrong.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.