STATE OF NEBRASKA, APPELLEE, V. MICHAEL S. PRICE, APPELLANT.

427 N.W.2d 81

Filed August 5, 1988.   No. 87-1022.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from the district court for Douglas County. After trial to a jury, the defendant, Michael S. Price, was found guilty of robbery and the use of a firearm to commit a felony. On the robbery charge, the defendant was sentenced to 3 to 7 years' incarceration, and on the firearms charge, the defendant was sentenced to 1 to 3 years, with the sentences to run consecutively. Defendant appeals, contending that the district court committed reversible error in overruling defendant's motion to suppress identification and that the sentence imposed was excessive. We affirm.

The record shows that on the morning of February 23, 1987, the victim, Theresa Tilford, was at her home in Omaha with her 1½-year-old daughter. At approximately 8:30 a.m., Tilford

awoke and opened up the kitchen curtains and shades. She then returned to her bedroom and lay down on her bed. Tilford's daughter was in a separate bedroom.

At approximately 9:15 a.m., Tilford heard a "loud boom" which sounded like someone kicking in the side door of her home. She became frightened and hid under her bedcovers. Through a $1\frac{1}{2}$- to 2-foot opening in the bedroom doorway, Tilford heard the voices of two men who had entered her home. Tilford testified that she recognized one of the voices as that of Ken Cammerer, who was sometimes known as "Roy." She had met Cammerer, who was the boyfriend of one of Tilford's friends. Tilford testified regarding the conversation between the men:

> I heard Ken say, "I'll get the TV, Monk, you get the VCR." And, ah, I heard—it sounded like my TV dropped. And, um, later I saw a hole in my coffee table from something hitting it. And, ah, I heard them say, um, "Roy, do they have any money? What else did you want me to take—these speakers?" And he said, "Yeah, Monk, go ahead and take them out."

The two men then began carrying various items belonging to Tilford out of the house. At that point, Tilford testified, her daughter started to cry. Through the opening of her bedroom door, Tilford saw the defendant standing in the hallway leading into her bedroom. He had a handgun. She next saw the defendant kick her daughter's bedroom door open and heard the defendant say, "Here's the kid. Where's the bitch?" She then heard footsteps, and Cammerer then entered her bedroom and aimed a shotgun at her. The defendant followed Cammerer into her bedroom and stood next to Cammerer. Tilford testified that she was able to observe the defendant's face for approximately 30 to 45 seconds. She pleaded with the men not to hurt her, and Cammerer warned her that if she called the police, he would "come back and blow your ------- head off."

After the warning, the two men then left her home and drove away, taking with them Tilford's television set, VCR, cassette player, and stereo speakers. Tilford saw the car leave with her possessions sticking out of the car trunk. Tilford then called the police and informed them that she had been robbed. When the

police arrived, she gave them the name of Ken Cammerer as one of the suspects and later described the second suspect as "a light male in his thirties, six foot, 190 pounds, dark hair with a full beard, clothing would have been flannel shirt . . . ." Officer Hunt requested Tilford to talk to some of her friends to determine "who would be running with Ken Cammerer as a possible suspect."

On February 24, 1987, Tilford identified Cammerer as the individual depicted in the second photograph of an eight-person photographic lineup prepared by Officer Hunt and shown to Tilford. At some time during the next week, Tilford called Officer Hunt and gave him the name of the second suspect, the defendant, Michael Price. Tilford had heard that Cammerer had a friend nicknamed "Monk" whose real name was Michael Price. In police files, Officer Hunt found a picture of a Michael Price who fit the physical description given to him by Tilford. The officer prepared a second eight-person photographic array, which was shown to Tilford on March 2, 1987. Tilford identified the defendant as the individual depicted in the second position on the photographic array. As a result of the identification, a warrant was issued, and the defendant was arrested on April 3, 1987.

In his first assignment of error, defendant contends that the district court committed reversible error in overruling the defendant's motion to suppress identification testimony of the victim. Defendant argues that the positioning of the photographs, and not any independent recall, caused Tilford to identify defendant and that, as a result, Tilford's later in-court identification during trial was unreliable.

In determining the correctness of a trial court's ruling on a motion to suppress, this court will uphold a trial court's findings of fact unless those findings are clearly erroneous. *State v. Holman, ante* p. 57, 424 N.W.2d 627 (1988); *State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782 (1988). In determining whether a trial court's findings are clearly erroneous, this court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding such motion to suppress. *State v. Hayes, ante* p. 53, 424 N.W.2d 624 (1988); *State v. Boysaw*, 228 Neb.

316, 422 N.W.2d 346 (1988).

The record shows that, prior to trial, the defendant filed a motion to suppress the testimony identifying the defendant, claiming that the procedures used to conduct the lineup were unduly suggestive and that any identification testimony "would be tainted by the improper and suggestive pretrial identification procedures employed." At the suppression hearing, held on June 29, 1987, Tilford testified as to the identification procedures used by Officer Hunt for the photographic array on March 2. Tilford testified that Officer Hunt instructed her that he wanted her to look at a series of eight photographs to see "if any one of these guys was him." Officer Hunt testified that Tilford looked at all photographs and identified the defendant "[a]lmost immediately."

With regard to the use of photographic arrays, we have held that the determination as to whether the identification procedures were unduly suggestive and conducive to a substantial likelihood of irreparable mistaken identification is to be made by a consideration of the totality of circumstances surrounding the procedures. *State v. Swoopes*, 223 Neb. 914, 395 N.W.2d 500 (1986). In *Swoopes*, we held at 918, 395 N.W.2d at 504: "It seems to the court relatively clear that an array of five photographs is sufficient to constitute a fair and adequate array when attempting to identify a single perpetrator."

Our review of the record fails to support defendant's contention that the identical positioning of Cammerer and the defendant in the different photographic arrays was unduly suggestive. There is nothing in the record to indicate that the positioning of the photographs was other than a mere coincidence. Officer Hunt testified that he chose photographs from the police file from "the same age group, color of hair, facial hair, the roundness of the face, if they're heavy." Our examination of the eight photographs shows that the individuals depicted in the photographs had dark hair and beards and appeared to be of the same age group, and that the array very accurately portrayed persons of a general group very similar to defendant in appearance. When confronted with the defendant's photograph, Officer Hunt testified, Tilford

became very agitated and exclaimed, "This is the guy, oh my God." Defendant's contention that the photographic lineup was unduly suggestive is without merit.

Even if the array had been improper, Tilford's identification of the defendant at trial was completely supported, independently, by Tilford's observations at the time of the robbery. In that connection, the totality of circumstances supports the finding of the trial court that the identification was based on her observation of the defendant during the robbery and was the basis for the subsequent identification. See *State v. Richard*, 228 Neb. 872, 424 N.W.2d 859 (1988). Tilford testified at trial that she "won't forget [defendant's] face." She described how the defendant appeared different at trial because "he doesn't have a beard today and his hair isn't really dirty and straggly as it was." The in-court identification was based independently on Tilford's ability to observe the defendant during the commission of the crime.

As the identification procedures used in the present case were not unduly suggestive, and Tilford's identification of the defendant at trial was based on independent recall, defendant's first assignment of error is without merit.

In defendant's second assignment of error, he contends that the sentence imposed was excessive. The defendant was found guilty of robbery, pursuant to Neb. Rev. Stat. § 28-324 (Reissue 1985). Robbery is a Class II felony, punishable by a minimum 1 year's imprisonment to a maximum 50 years' imprisonment. The defendant was also found guilty of the use of a firearm to commit a felony, pursuant to Neb. Rev. Stat. § 28-1205 (Reissue 1985), which is a Class III felony, punishable by a minimum 1 year's imprisonment to a maximum 20 years' imprisonment. The defendant was sentenced to 3 to 7 years on the robbery charge and 1 to 3 years on the firearms charge, with the sentences to be served consecutively.

The sentences imposed were well within the statutory limits. It is settled that a sentence imposed within the limits prescribed by statute will not be set aside as excessive absent an abuse of discretion on the part of the sentencing judge. *State v. Ladehoff, ante* p. 111, 425 N.W.2d 352 (1988); *State v. Clark*, 228 Neb. 599, 423 N.W.2d 471 (1988). The trial court did

not abuse its discretion in imposing the sentence it did. Defendant's second assignment of error is without merit.

The judgment of the district court is affirmed.

AFFIRMED.