State of Nebraska, appellee, v. Douglas J. Texel, appellant.
433 N.W.2d 541

Filed January 6, 1989.   No. 87-977.

Anthony S. Troia for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

CAPORALE, J.

Defendant-appellant, Douglas J. Texel, was charged in the county court with seven counts of promoting gambling in the first degree in violation of Neb. Rev. Stat. § 28-1102 (Reissue 1985), and with one count of possessing gambling records in violation of Neb. Rev. Stat. § 28-1105 (Cum. Supp. 1986). Following a bench trial, the county court found him guilty as charged and sentenced him to pay a fine of $1,000 on each of the eight counts and to consecutive 30-day terms of incarceration on each count, to be served intermittently during 20 days of each of the succeeding 12 months. Texel appealed to the district court, which affirmed the judgment of the county court. In his appeal to this court, Texel assigns as error the district court's failure to find error on the record made in the county court, claiming that the county court erred in (1) refusing to suppress certain evidence and (2) imposing excessive sentences. Pursuant to order of this court, the parties have additionally briefed and presented oral arguments concerning the propriety of the intermittent nature of the sentences, which Texel claims to be valid and which the State claims to be erroneous. We affirm in part and, in part, reverse and remand for further proceedings.

On the basis of information from a variety of sources, including from a law enforcement officer believed to have the reputation of telling the truth, Fremont Police Det. Greg Chamberlain came to suspect that Texel was engaged in bookmaking activities both at his Fremont residence and at the Dugout Bar, a Fremont saloon in which Texel has an ownership interest. Chamberlain thereupon undertook a series of warrantless searches of the trash placed behind the bar, as well as the trash located at Texel's residence. These searches, conducted at various times during the period from December 30, 1985, through November 11, 1986, produced evidence of gambling activities at both locations.

As a consequence, on November 17, 1986, warrants were issued permitting searches of the two locations and seizures of such described evidence of gambling activities as might be found. The items seized at Texel's residence included wagering records, racing forms, and other sports information, together

with a book entitled "Bet To Win." The items seized at the bar included betting forms and "odds sheets" cut into scrap.

Texel moved that all evidence obtained as the result of the November 17 search be suppressed. The county court suppressed the evidence obtained from the search of the bar, but refused to suppress the evidence obtained from the search of Texel's residence and, subsequently, received it in evidence at the trial.

In connection with the first error he assigns to the county court, Texel argues that the search of his residence pursuant to the warrant issued November 17, 1986, and seizure of the items discovered as a result thereof violated his rights "against unreasonable searches and seizures" provided by the fourth amendment to the U.S. Constitution and art. I, § 7, of the Nebraska Constitution, and must therefore be suppressed. He rests the argument on the premise that the warrant was the product of the prior illegal warrantless searches of his residential trash. See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

The relevant evidence as to the constitutionality of the search and seizure in question is in conflict. According to Chamberlain, the residential trash bags had been positioned near the street curb for collection. However, one of Texel's friends testified that he drove past or visited Texel's residence once or twice weekly and had never seen trash bags placed near the curb, but had seen such in Texel's carport. The parties stipulated that if Texel's immediate neighbor were called as a witness, he would testify that he had never seen Texel place garbage near the curb, nor had he ever seen any garbage truck stop at Texel's property. Although the relevance is not clear to us, the parties further stipulated this witness would also testify that at some time between September and November of *1987*, he saw a man rummaging through two or three garbage bags under Texel's carport. It was additionally stipulated that a second neighbor would testify she had never seen Texel deposit garbage near the curb. Finally, Texel testified that he usually kept his residential garbage in trash bags in his basement, and remembered leaving one bag of trash in the carport. He stated that he never placed garbage near the curb, as he did not use a

trash removal service. He removed the trash from his residence himself in his own pickup truck.

Following the lead of the U.S. Supreme Court in *California v. Greenwood*, ____ U.S. ____, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988), we recently observed in *State v. Trahan*, 229 Neb. 683, 428 N.W.2d 619 (1988), that one can have no reasonable expectation of privacy in the inculpatory items he or she discards. Thus, no reasonable expectation of privacy exists in garbage which has been made accessible to the public.

Obviously, then, the crucial question with respect to Texel's first assignment of error is whether Texel's residential garbage had in fact been made accessible to the public by being placed near the street curb for collection, as claimed by Chamberlain, or was kept in Texel's basement and carport, as claimed by Texel and corroborated by his friend and neighbors, and thus not made accessible to the public. The county court, as the trial court, elected to believe Chamberlain. Were we free to review this matter de novo on the record, we might conclude otherwise; however, we are required, as was the district court, to uphold the trial court's factual findings in ruling on a motion to suppress unless those findings are clearly wrong. *State v. Price*, 229 Neb. 448, 427 N.W.2d 81 (1988); *State v. Holman*, 229 Neb. 57, 424 N.W.2d 627 (1988). Moreover, in determining whether a trial court's findings in ruling on such a motion are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court observed the witnesses. *State v. Price, supra*; *State v. Hayes*, 229 Neb. 53, 424 N.W.2d 624 (1988).

While it is true that the parties elected to present much of the evidence relevant to the issue by stipulation, there were witnesses who testified in person and whose credibility the trial court assessed. Under the circumstances, we cannot say the factual findings of the trial court are clearly wrong. That being so, the warrant cannot be said to have resulted from constitutionally impermissible prior warrantless searches. Texel's first assignment of error is therefore without merit.

This brings us to the sentences and, more particularly, to the intermittent manner in which they are to be served. In *State v. Jurgens*, 187 Neb. 557, 192 N.W.2d 741 (1971), this court, in the

course of determining that the sentence in question was otherwise erroneous because of ambiguity, nonetheless proclaimed that a sentence providing for intermittent incarceration could not be imposed in the absence of the defendant's consent. More recently, in *State v. Havorka*, 218 Neb. 367, 355 N.W.2d 343 (1984), we found the statutory language that the period of license suspension for a drunk driver be for a period of 6 months "from the date of the order" prohibited interruption of the period of suspension. That rule was followed in *State v. Ramirez*, 218 Neb. 899, 360 N.W.2d 484 (1984). Moreover, it has long been the settled law of this jurisdiction that when a person is convicted of several distinct offenses and a cumulative sentence is imposed, the judgment should not fix the day on which each successive term of imprisonment should commence, but should direct that each successive term begin immediately following cessation of the presiding term, as the prior term of imprisonment may be shortened by the good behavior of the defendant, by executive clemency, or by a reversal of the judgment. *Luke v. State*, 123 Neb. 101, 242 N.W. 265 (1932); *In re Walsh*, 37 Neb. 454, 55 N.W. 1075 (1893).

On further reflection, we reject that portion of *Jurgens* which holds that an intermittent sentence is permitted if consented to by the defendant. As observed in *State v. Kinney*, 217 Neb. 701, 350 N.W.2d 552 (1984), a sentence is not in the nature of a quasi-contract which a defendant is free to accept or reject. A sentence as imposed either is or is not within a court's authority and is either legally correct or erroneous.

As the State has observed, widely varying the method of serving periods of incarceration increases the likelihood of uneven application of the law to various individuals in our society. Not only is a prisoner entitled to pay his debt to society in one stretch, not in bits and pieces, see *Segal v. Wainwright*, 304 So. 2d 446 (Fla. 1974), but society also has the right to expect that once a defendant has been incarcerated, the time will not be served in bits and pieces.

It should also be noted that the intermittent nature of Texel's sentences thwarts the good-time scheme embodied in Neb. Rev. Stat. § 47-502 (Reissue 1988), which provides:

Any person sentenced to a city or county jail shall have his or her term reduced seven days for each twenty-one consecutive days during which he or she has not committed any breach of discipline or other violation of jail regulations. The reductions authorized by this section shall be granted at the end of each period of twenty-one days, with such periods to run consecutively from the date of confinement following sentencing.

We thus determine the sentences imposed to be erroneous; each sentence is therefore vacated and set aside and the cause remanded for resentencing.

In view of that determination, we do not reach the question of whether sentences of 30 days' incarceration for each offense, to be served consecutively, were excessive.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

HASTINGS, C.J., concurs.

GRANT, J., dissenting in part.

I agree with the court's disposition of all issues in this case, but I dissent from the court's determination that it is not necessary to reach the question of the excessiveness of the sentence imposed on defendant. I think the sentence is excessive and the trial court should be so advised before resentencing defendant.

The presentence investigation shows that this 32-year-old, married defendant with a child has never before been found guilty of any criminal or traffic charge (misdemeanor or felony) either as a juvenile or as an adult, nor has he ever been arrested for any offense. He operates his own bar business, and has no history of alcohol or drug abuse. To impose on a first-time offender a bizarre sentence stretching over a 1-year period (which this court has determined is an erroneous sentence) is an abuse of discretion, in my judgment, particularly when the sentencing judge relies, in part, on his belief that gambling "is not a victimless act." Whether that statement is true or not, I do not believe that such a personally held concept should be used as a reason for such a lengthy sentence for a first-offense, nonviolent crime. It is certainly within the knowledge of the

sentencing judge that the State has officially sanctioned many forms of gambling; that, among other things, pickle parlors proliferate, resulting in the filing of lawsuits to protect the business interests in operating such parlors; and that one of the statutes under which defendant was prosecuted provides for punishment only for enterprises "not conducted pursuant to . . . the Nebraska Bingo Act, the Nebraska Pickle Card Lottery Act, [or] the Nebraska Lottery and Raffle Act." The voters of this State have recently authorized a constitutional amendment permitting interstate wagering in certain places.

It is clear that defendant has deliberately violated the laws of this State, but in my judgment, there is no reason not to use the probation system, in a situation for which it was designed, to attempt to help this defendant straighten out his life, as was done in *State v. Trahan*, 229 Neb. 683, 428 N.W.2d 619 (1988). In that case, the defendant Trahan had an alcohol and drug problem and had two prior convictions for drunk driving. He was placed under an intelligently designed probation plan for 3 years, together with a 90-day sentence, in an effort to return that defendant to a productive life. Trahan had been found guilty of possession of cocaine, possession of gambling records, and promoting gambling.

If it were determined that probation was not appropriate, then 30-day concurrent sentences, together with the large fines imposed, are more than adequate to correct defendant's conduct to conform to legal standards. If such probation or imprisonment did not lead defendant to correct his ways, then the draconian measures imposed might have some merit. The sentencing judge and the probation officer who recommended incarceration should know the severe impact of a relatively short jail term on a person who has never been involved at all in the criminal justice system. Similarly, they should know the effect of a lengthy sentence on this defendant and his dependents.

I would affirm defendant's conviction, but remand the cause for resentencing on the grounds that the sentence, as imposed, is both erroneous and excessive.