**UNITED STATES, Appellee,**

v.

**Robert J. WILKINSON,
Defendant, Appellant.**

**No. 90–1376.**

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1990.
Decided Feb. 11, 1991.

John H. LaChance, Framingham, for defendant, appellant.

A. Clayton Spencer, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before BREYER, Chief Judge,
SELYA, Circuit Judge, and PETTINE,* Senior District Judge.

BREYER, Chief Judge.

The convictions before us arise out of three events:

1) In May 1988, state police found cocaine and guns in Robert Wilkinson's house.
2) In October 1988, Wilkinson jumped bail.
3) In September 1989, federal agents found Wilkinson at the home of friends; they also found cocaine and guns in Wilkinson's duffel bag.

Subsequently, a federal jury convicted Wilkinson of:

1) simple possession of cocaine (in 1988), 21 U.S.C. § 844(a);
2) jumping bail, 18 U.S.C. § 3146(a)(1);
3) possessing cocaine with intent to distribute it (in 1989), 21 U.S.C. § 841(a)(1);
4) carrying or using a gun in connection with a drug offense (in 1989), 18 U.S.C. § 924(c); and
5) as a previously convicted felon, unlawfully possessing a gun (in 1988 and 1989), 18 U.S.C. § 922(g)(1).

Wilkinson appeals these convictions. After reading his lengthy brief and the record with care, we find his arguments unpersuasive, and we affirm the convictions. We shall explain why.

I

*The 1989 Search*

■ On September 24, 1989, law enforcement officers found Wilkinson (who had jumped bail) at the home of his friends, Mr. and Mrs. Wilkes. They searched Wilkinson's duffel bag and found drugs and guns. Wilkinson says that, because the officers had no search warrant but only an arrest warrant, the Constitution forbids their search of his duffel bag, and, the court should have suppressed the drugs and guns as evidence. *See Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990); *Chimel v. California*, 395 U.S. 752, 768, 89 S.Ct. 2034, 2042, 23 L.Ed.2d 685 (1969). The Government replies that the search was constitutional because Wilkinson gave his consent. The issue before us is whether the district court could lawfully find that Wilkinson's consent was voluntary, not "coerced." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973) (defendant's consent does not validate search if his "will has been overborne").

We review the district court's fact finding only for "clear error." *United States v. Twomey*, 884 F.2d 46, 51–52 (1st Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990). The record reveals that four law enforcement officers entered the Wilkes' home. Wilkinson appeared at the top of a flight of stairs, hands on his head, telling the officers to leave Mrs. Wilkes alone, adding that "everything was his." Mrs. Wilkes gave the officers permission to search the house. Wilkinson's duffel bag was in the basement. Wilkinson then specifically told the officers they could search his duffel bag.

The record also shows that the officers had entered the house with guns drawn, there was considerable commotion, they had handcuffed and frisked Wilkinson, he repeatedly asked them to leave Mrs. Wilkes alone, he initially denied having any guns or drugs in the house, one of the officers then threatened they would "tear the place apart" unless he told them more, and he had taken drugs earlier in the evening.

On the other hand, the record supports the district court's findings that Wilkinson's "cognitive abilities were not compromised" by his earlier use of drugs, that the officers "lowered their weapons" once Wil-

---

* Of the District Court of Rhode Island, sitting by designation.

kinson "was secured," that he "acted in a calm, professional manner and appeared to understand his options clearly," that he was "embarrassed" that the officers had found him in the home of his "good friends" whom he wished "to save ... from further involvement," and that he explicitly said the officers could search his bag, he told the officers where his bag could be found, and he pointed out the location of the guns in the bag.

Given these findings of fact, we cannot say, as a matter of law, that Wilkinson's consent was coerced. His will was not "overborne," in the sense of his having suffered a "critically impaired ... capacity for self-determination." *Schneckloth*, 412 U.S. at 225, 93 S.Ct. at 2047. That is to say, Wilkinson consented "voluntarily," in the sense that neither drugs nor any other circumstance made him unaware of, or mistaken about, any key fact, or unable physically to decide or to choose whether or not to agree to the search. · *See id.* at 226, 93 S.Ct. at 2047. Moreover, the agents did not coerce his voluntary decision by improperly placing before him an impermissible choice; they did not, for example, threaten him with a gun in order to elicit an otherwise "voluntary" consent. *See id.* at 224 & n. 7, 93 S.Ct. at 2046 & n. 7. One of the officers did "threaten to tear the place apart," but the district court could reasonably find that this statement, in light of Mrs. Wilkes' consent to a search of the house, amounted (in rather strong terms) to no more than a permissible promise to search the house thoroughly and (likely) find the guns eventually anyway. Consequently, we cannot say that the search violated the federal Constitution; and admission of the evidence was lawful.

## II

### *The 1989 Drug/Firearm Offense*

The jury convicted Wilkinson of violating 18 U.S.C. § 924(c)(1), which provides criminal punishment for any person who

> during and in relation to any ... drug trafficking crime ... uses or carries a firearm....

Wilkinson concedes, for the sake of argument, that the law enforcement officers found two guns and four ounces of cocaine in his bag and that the jury might have convicted him of a relevant "drug trafficking crime." He argues, however, that it could not lawfully convict him of the firearm crime for three reasons.

■ First, he says that the evidence was not sufficient to convict. He says that the guns were buried in the duffel bag, one wrapped in a towel, the other zipped up in a small leather bag. Hence, they were not readily available for use during, and therefore were not "use[d]" in "relation to," the drug crime.

The legal question is simply whether a reasonable juror could conclude that Wilkinson had control over a gun and that it facilitated the commission of his drug crime, namely distributing cocaine to others from the duffel bag. *See United States v. Meggett*, 875 F.2d 24, 29 (2d Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989) ("it was sufficient to show that the firearm furthered the commission of the drug trafficking crime"); *United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir.1985) ("Section 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony."); *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985) (Kennedy, J.) ("If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute."). The fact that the guns were in the same duffel bag as the drugs helps to support such a conclusion. *See United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir.1990) ("It is permissible for juries to infer that firearms found among a drug trafficker's paraphernalia are used to further the drug venture and are thus used in relation to drug trafficking within the meaning of section 924(c)(1)."); · *United*

States v. Lyman, 892 F.2d 751, 752–54 (8th Cir.1989), cert. denied, — U.S. ——, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990); United States v. Boyd, 885 F.2d 246, 250 (5th Cir.1989); LaGuardia, 774 F.2d at 321.

Of course, other facts about the location of the drugs, namely the facts that the guns were somewhat removed from the drugs within the bag and were hard to unpack, support appellant's claim that the guns did not facilitate the crime. But, ultimately, whether or not the guns helped appellant commit the drug crime is a matter for a jury, applying common-sense theories of human nature and causation. A juror might think it clear beyond a reasonable doubt that a person who carried guns so near four ounces of drugs intended the guns for protection when carrying or distributing the drugs. We cannot say that such a juror would be an unreasonable human being. And, consequently, we must find the evidence sufficient to support conviction. See United States v. Guerrero–Guerrero, 776 F.2d 1071, 1075 (1st Cir. 1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986); see also Young–Bey, 893 F.2d at 181; Lyman, 892 F.2d at 752–54; Boyd, 885 F.2d at 250; LaGuardia, 774 F.2d at 321. But see United States v. Feliz–Cordero, 859 F.2d 250, 254 (2d Cir.1988) (distinguished in United States v. Hadfield, 918 F.2d 987, 997 (1st Cir.1990)).

Second, Wilkinson says that the trial court should have instructed the jury that, to convict, it must find

> that the defendant ... had a specific intent to use or have the firearms available for use, if needed, in the drug trafficking crime he was accused of committing.

The court, however, did give an instruction that embodied the essence of Wilkinson's request. The court told the jury

> It is not enough to show that he possessed the guns, just possessed them; rather, the Government has to prove that the guns in some way facilitated the drug crime. If you find that the defendant carried guns on one or both dates, the question is *for what purpose* did he

do so? Was it to protect the drugs or himself in connection with the drug transaction, or was it to protect jewelry, or because he had a general fear of robbers?

(emphasis added). We do not see how the court's description of the defendant's "purpose" differs in any significant way from Wilkinson's desire that the jury understand it must find a "specific intent."

Third, Wilkinson points out that the Government supported its claim that he intended to *distribute* the four ounces of cocaine found in his duffel bag (rather than simply using it himself) in part by showing that, earlier in the evening, he had shared with Mrs. Wilkes cocaine from a different stash (a half ounce or so that he kept in his trousers pocket). He seems to argue that the judge should have instructed the jury that, insofar as it inferred an intent to distribute the duffel-bag-four-ounces from the sharing of the trousers-pocket-half-ounce, it had to believe the guns in the duffel bag were meant to protect the sharing of the trousers-pocket-half-ounce.

We are not certain whether we understand the argument correctly. If we do, we do not understand why he would have been entitled to the instruction. But, in any event, we must reject the argument because we cannot find a proper objection in the record. As we have repeatedly held, Fed.R.Crim.P. 30 means what it says. A party may not claim error in the judge's charge to the jury unless that party "objects" after the judge gives the charge but before the "jury retires," and, when objecting the party must "stat[e] ... distinctly the matter to which that party objects and the grounds of that objection." Fed.R.Crim.P. 30; see, e.g., United States v. Sturm, 870 F.2d 769, 775–76 (1st Cir.1989). The only language that we find that arguably makes such an objection on the record page to which counsel refers us says: "I would incorporate arguments that I made earlier on the record before." In context, this statement does not "distinctly" point to any specific prior objection, let alone explain the "grounds" of that objection. Nor did counsel's prior (precharge) discus-

sion of the subject explain clearly the "grounds" for the objection. Under these circumstances, we cannot consider the point.

## III

### The 1988 Search

Wilkinson claims that his conviction for possessing drugs in 1988 rested upon unlawfully seized evidence, namely seven ounces of cocaine, drug paraphernalia, and money that police seized at his home on May 25, 1988. Wilkinson concedes that the police had a search warrant, but he says that the warrant, constitutionally speaking, was invalid for two reasons.

■ First, Wilkinson points out that the magistrate who issued the warrant, in finding probable cause for the search, relied in part upon the police having found bags with cocaine residue and round perforated pieces of aluminum foil (of a kind often used for "freebasing" cocaine) in Wilkinson's trash. Wilkinson argues that the warrantless police searches of his trash containers—three times in 1986 and three times in 1988—violated the Fourth Amendment's prohibition of unreasonable searches.

The short conclusive answer to this claim is that the Supreme Court has specifically held that the Fourth Amendment does not forbid a warrantless search of trash left out for collection. *See California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). Wilkinson says that, compared with the defendant in *Greenwood,* he had an elevated "expectation of privacy" in respect to his trash, because 1) he had left it for collection on his own lawn next to the curb, while the *Greenwood* defendant apparently left the trash on the curb itself, and 2) he had placed his trash in bags within barrels, while the *Greenwood* defendant apparently did not do so.

But, these are distinctions without a difference. The *Greenwood* Court, in finding that the defendant lacked any significant "expectation of privacy," wrote:

It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as police, to do so.

486 U.S. at 40, 108 S.Ct. at 1629. This language applies equally well to the present case. *See United States v. Trice,* 864 F.2d 1421, 1423–24 (8th Cir.1988), *cert. dismissed,* 491 U.S. 914, 109 S.Ct. 3206, 105 L.Ed.2d 714 (1989); *but see United States v. Certain Real Property Located at 987 Fisher Road,* 719 F.Supp. 1396, 1404 (E.D.Mich.1989) (defendant had reasonable expectation of privacy in trash left for pickup by back door).

■ Second, Wilkinson argues that the affidavit presented to the magistrate failed to show probable cause for the search. The affidavit, however, described six separate occasions upon which law enforcement officers found cocaine residue in trash outside Wilkinson's house, the last occasion being the very day on which the affidavit was written. The magistrate could thereby infer a reasonable probability that searching officers would find cocaine inside the house itself.

## IV

### Sentence Enhancement Under the Armed Career Criminal Act (ACCA)

If a felon convicted of unlawfully possessing a firearm (such as Wilkinson) has "three prior convictions for a violent felony," the court must sentence him to a prison term of at least 15 years. *See* 18 U.S.C. § 924(e)(1). At Wilkinson's sentencing hearing, the Government introduced certified copies of four such prior convictions: 1) a September 1955 armed robbery conviction, 2) an October 1955 breaking and entering conviction, 3) a 1960 breaking and entering conviction, and 4) a 1968 armed robbery conviction. Wilkinson says (and the Government concedes) that these con-

victions fall within the statutory phrase "three prior convictions" only if they are constitutionally valid convictions. *See United States v. Tucker,* 404 U.S. 443, 447–49, 92 S.Ct. 589, 591–93, 30 L.Ed.2d 592 (1972) (sentencing judge may not consider constitutionally infirm prior conviction); *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967) (same) (dictum). And, Wilkinson argues that the Government has not proved they are constitutionally valid because it has not shown he was represented by counsel during the 1955 "breaking and entering" proceedings or during the 1968 armed robbery proceedings.

The parties argue at length about who has the burden of proving the constitutional validity or invalidity (for sentencing purposes) of a prior, predicate conviction. The Government points out that, theoretically speaking, any given conviction might suffer any of a myriad of constitutional defects. Practically speaking, it is the defendant, not the probation officer or the Government, who will know any particular defect-related details about any particular prior conviction. For such reasons, the Sentencing Commission (and courts) in related sentencing areas have said that, once the Government establishes the existence of a prior conviction, the burden shifts to the offender to show that the conviction violated the Federal Constitution. *See* Sentencing Guidelines § 4A1.2 Application Note 6 ("Convictions *which the defendant shows* to have been constitutionally invalid may not be counted in the criminal history score.") (emphasis added); *United States v. Unger,* 915 F.2d 759, 764 (1st Cir.1990); *United States v. Dickens,* 879 F.2d 410, 411–12 (8th Cir.1989). These practical reasons, and the need for uniformity in sentencing procedure, would counsel a similar result here. And, Wilkinson could not meet such a test, for he did not provide the sentencing court, nor has he provided us, with any good reason to believe that he did not have a lawyer in either 1955 or 1968. He has nowhere said, for example, that he did not have a lawyer; he simply says the Government did not prove that he did.

■ We need not decide the "burden of proof" question definitively, however, for there is a simpler reason why Wilkinson's argument fails. To enhance Wilkinson's sentence, the Government must show in post-trial sentencing proceedings that he had three prior "violent felony" convictions. *See* 18 U.S.C. § 924(e)(1). Ordinarily, the Government must prove facts used for sentencing by "a preponderance of the evidence." *See, e.g., United States v. Wright,* 873 F.2d 437, 441 (1st Cir.1989). The "evidence" that it may use to make this showing must be "reliable," but it need not meet "hearsay," or other formal evidentiary requirements. *See United States v. Moccia,* 681 F.2d 61, 65 (1st Cir.1982); *United States v. Fatico,* 579 F.2d 707, 713 (2d Cir.1978). We know of no reason why this would be different in the ACCA context. The Government showed that Wilkinson had three prior "violent felony" convictions by introducing certified copies of four convictions, along with various other procedural papers from the prior proceedings. With one exception, not a word in the record suggests that Wilkinson was *not* represented by counsel during these prior proceedings. Since the number of felony cases where a defendant lacks counsel must be small (particularly after *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), a sentencing court may permissibly infer from the record of the conviction that the conviction was not obtained unconstitutionally provided the record contains no reason to believe the contrary.

■ As we noted above, the record contains *almost* no reason to believe the contrary. But there is one exception. The document used to prove the 1968 conviction for armed robbery has a space for the name of defense counsel, and that space is blank. The record, however, also contains the presentence report, which specifically says that Wilkinson *was* represented by counsel in 1968—a conclusion that the presentence report says it reached on the basis of a different presentence report relevant to a 1977 federal prosecution, which, in turn, says it obtained that information from "court records." In sentencing mat-

ters, presentence reports are normally considered reliable sources of information, upon which sentencing courts may rely, as are court records. That is to say, courts can, and do, commonly take as true facts stated in presentence reports *when they are not challenged. See, e.g., United States v. McVicar,* 907 F.2d 1, 2 (1st Cir. 1990); *United States v. McDowell,* 888 F.2d 285, 290 n. 1 (3d Cir.1989). As we have said, Wilkinson nowhere has denied that he had counsel in 1968. He claims only that the Government did not prove that he did. Wilkinson does not claim that he did not see the presentence report before sentencing. Nor does he claim he was not given an opportunity to challenge the statement. *See* Fed.R.Crim.P. 32(c)(3)(A). In our view, under these circumstances, the certified convictions, the record references we have just mentioned, the fact that an uncounseled felony proceeding would be most unusual, and the absence of any other indication that Wilkinson lacked counsel, are more than enough to permit a court to conclude that his prior record satisfied the statute's terms, irrespective of how we might eventually decide to allocate the burden of proving (under the ACCA) that an otherwise apparently valid predicate conviction was unconstitutional.

■ Wilkinson's final argument is that one of the predicate convictions—the 1960 conviction—is not a "violent felony" for purposes of the sentencing statute. That statute defines "violent felony" as "any crime ... that ... is burglary ... or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Wilkinson's 1960 conviction was for breaking and entering a building in the nighttime with the intent to commit a felony, in violation of Mass.Gen.L. ch. 266, § 16. We have held that this crime falls within the statute because it "involves conduct that presents a serious potential risk of physical injury to another." *See United States v. Patterson,* 882 F.2d 595, 604 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 737, 107 L.Ed.2d 755 (1990). The Supreme Court more recently held that "burglary" includes "an unlawful ... entry into ... a

building ... with intent to commit a crime." *Taylor v. United States,* —— U.S. ——, 110 S.Ct. 2143, 2158, 109 L.Ed.2d 607 (1990). Hence, one way or the other or both, the predicate offense falls within the statute.

The judgment of the district court is *Affirmed.*