**UNITED STATES of America, Plaintiff,**

v.

**Alan N. SCOTT, Defendant.**

**CR. No. 89–234–T.**

United States District Court,
D. Massachusetts.

Oct. 31, 1991.

---

Asst. U.S. Atty. Mark Pearlstein, Boston, Mass., for Government.

Charles McGinty, Federal Defender Office, Boston, Mass., for defendant.

### MEMORANDUM

TAURO, District Judge.

On June 28, 1989, Internal Revenue Service ("I.R.S.") special agents seized gar-

bage from the curb in front of defendant's home in West Roxbury. Finding much of the trash shredded, the agents "painstakingly reconstructed" it. Application for Search Warrant, Aff. of Agent Dennis J. Wlodyka dated August 15, 1991 ¶ 5F (hereinafter "Wlodyka Aff."). The agents later relied upon the reconstructed material to obtain a warrant to search defendant's home. During the ensuing search, the agents seized numerous documents and possessions belonging to defendant, and used this material to obtain a second search warrant for his home.

Relying at least in part on the fruits of the shredded trash that had been reconstructed, a grand jury, on August 31, 1991, indicted defendant for filing false tax claims. Presently at issue is defendant's Motion to Suppress the papers and materials seized from his trash, on the theory that the agents' actions amounted to an unreasonable search and seizure. In support, defendant argues that, by shredding documents, he manifested an objectively reasonable expectation of privacy that is protected by the Fourth Amendment. Defendant further moves to suppress all materials seized from his home, on the theory that the reconstructed materials provided the sole basis for the search warrants.

### I.

The controlling standard for determining a defendant's right to privacy in his trash was enunciated in *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988):

The warrantless search and seizure of the garbage bags left at the curb outside [a person's] house would violate the Fourth Amendment only if [the person] manifested a subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable.

*Id.* at 39, 108 S.Ct. at 1628.[1] Reasoning that "[i]t is common knowledge that plastic

---

1. In *Greenwood,* the Supreme Court chose not to rely on principles of abandonment in its Fourth Amendment analysis. *See id.* at 51, 108 S.Ct. at 1634 (Brennan, J., dissenting) ("The Court properly rejects the State's attempt to distinguish trash searches from other searches on

the theory that trash is abandoned and therefore not entitled to an expectation of privacy."). *See also United States v. Hedrick,* 922 F.2d 396, 397 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 147, 116 L.Ed.2d 113 (1991) (acknowledging that *Greenwood* was not decided on principles

garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public," *id.* (footnotes omitted), the Court determined that society would not accept as reasonable the defendants' asserted expectation of privacy in their garbage.[2] *Id.* at 40–41, 108 S.Ct. at 1628–29.

The parties here agree that *Greenwood* sets the standard for resolving defendant's right to privacy claim. But they differ markedly as to the impact of that standard on the facts of this case.

The government would have this court read *Greenwood* as laying down a bright line rule that there is no reasonable expectation of privacy in garbage left out for collection. In support, the government relies on *United States v. Wilkinson*, 926 F.2d 22 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991), where the court rejected a claim of privacy in garbage. *Wilkinson*, however, does not support the government's assertion that *Greenwood* established a bright line rule. Rather, *Wilkinson* was a fact specific application of the *Greenwood* standard. In *Wilkinson*, the defendant had placed his trash bags within barrels on his own lawn, as opposed to in plastic bags at the curb, as was the situation in *Greenwood*. *Id.* at 27. The court determined these circumstances were "distinctions without a difference," that did not amount to an elevated expectation of privacy.

This court does not read *Greenwood* as setting down a bright line test with respect to garbage bags left at the curb. Rather, *Greenwood* teaches that, when faced with an alleged Fourth Amendment violation such as this, the court should employ a two-part analysis. First, the court must determine whether a person has manifested a subjective expectation of privacy. Second, the court must determine whether society would accept the circumstances of that expectation as objectively reasonable.[3]

Here, defendant had manifested a subjective expectation of privacy. By shredding his papers, defendant clearly indicated his intention that no one read them. The operating instructions accompanying defendant's shredder state that its purpose is "to dispose of confidential documents in a secure manner." Def.'s Ex. A Attach. A at 3. Moreover, in Boston, shredding may be the most effective and practical means for destroying documents, as the burning of trash without a special permit violates both fire and air pollution regulations.[4] *See* Aff. of Charles P. McGinty dated September 18, 1991 ¶ 2.

Defendant has also demonstrated that society would accept as reasonable his expectation of privacy when he shredded his documents. On this point, it is important to bear in mind that the test is not whether society would approve of a putative defendant's efforts to destroy potentially incriminating evidence by shredding. Rather, the test is whether society would accept as reasonable a person's expectation that shredded documents would not be read by anyone else.

Numerous manuals and articles indicate that shredding is widely viewed as an appropriate way to ensure the privacy of discarded papers. Within a span of a decade, the shredder machine industry has grown significantly, with annual sales increasing from $2 million in the mid–1970's, *see* Def.'s Ex. A Attach. H at 72, to $75 million

---

of abandonment). Principles of abandonment, therefore, will not enter the analysis of the Fourth Amendment issue in the instant case.

2. A second justification for the Court's ruling turns on the defendants' having "placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash." *Id.*

3. Cases employing the two-part test described *supra* include *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir.1989); *United States v. Donnes*, 752 F.Supp. 411, 415 (D.Wyo.1990); *United States v. Taddeo*, 724 F.Supp. 81, 83 (W.D.N.Y.1989), *aff'd*, 932 F.2d 956 (2d Cir. 1991); *Wilkes v. Clayton*, 696 F.Supp. 144, 147 (D.N.J.1988).

4. *See* Boston, Mass., Fire Prevention Code §§ 15.01, 15.04 (August 7, 1979); Regulations for Control of Atmospheric Pollution, §§ 1, 6.1 (December 17, 1976).

in 1987. *See* Def.'s Ex. A Attach. E at 86. This "shredder sales growth continues on a consistent basis because of expanding consumer awareness of the need to destroy obsolete sensitive information." *Id.* The former Director of the F.B.I., Clarence M. Kelley, stated that "[s]hredding is the most convenient and efficient method of on-site document destruction." Def.'s Ex. A Attach. M at 2.[5]

Persuasive case law exists to support the proposition that an individual has a privacy interest in shredded documents. In *Pleasant v. Lovell*, 876 F.2d 787 (10th Cir.1989), the court acknowledged that "whether discarded documents were entitled to fourth amendment protection turned on whether the method of discarding could support a reasonable expectation of privacy." *Id.* at 802. The court there continued, "We think it was clear that one who takes steps for the secure disposition of trash by a method reasonably calculated to avoid snooping can have a reasonable expectation of privacy in trash." *Id.* Similarly, in *United States v. Kramer*, 711 F.2d 789 (7th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983), discussed with approval in *Hedrick*, 922 F.2d at 398, the court stated

> Of course people sometimes do not want others to see things—e.g., magazines, financial records, correspondence, doctor bills—that they sometimes throw away. But people can easily prevent this by destroying what they want to keep secret before they discard it, or by not discarding it. Defendant could have burned or

*shredded* his drug records before he discarded them.

*Kramer*, 711 F.2d at 792 (emphasis added).[6]

Here, defendant had taken steps to protect his privacy rights by shredding his trash. In *Greenwood* the Court stated that it was "common knowledge" that trash left on the curb is accessible to snoops and scavengers. 486 U.S. at 40, 108 S.Ct. at 1628. But, it is not "common knowledge" that snoops and scavengers may retrieve shredded materials and then "painstakingly reconstruct" them to learn the contents.[7] Society would accept as reasonable, therefore, defendant's belief that, once he shredded his documents, they would be shielded from public examination.

## II.

The government argues that, even if the search of defendant's garbage were invalid, the warrants to search defendant's home were properly based upon other information set forth in the investigator's affidavit.

To the contrary, the evidence that the government had obtained up to the point of the illegal search was insufficient to establish probable cause to obtain a search warrant. The only grounds arguably implicating defendant in criminal wrongdoing were his previous convictions of filing false claims against the government, his proficiency with computers, and his position as a bookkeeper at a firm employing six persons whose names had allegedly been used in a

---

**5.** Allegheny Corporation, a manufacturer of paper shredders, lists as its customers such companies as A.T. & T., General Electric, I.B.M., the Mayo Clinic and Price Waterhouse. Def.'s Ex. A Attach. D.

**6.** Other cases support the proposition that an individual may manifest a privacy interest in his garbage. *See United States v. Terry*, 702 F.2d 299, 309 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983) ("In the rare instance when [a person] desires to preclude inspection by others of private papers in his garbage he may do so by first shredding or burning them or by hand-delivering the papers to a garbage-grinding machine."); *United States v. Crowell*, 586 F.2d 1020, 1025 (4th Cir.1978),

*cert. denied*, 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979) ("[A]bsent proof that a person has made some special arrangement for disposition in his garbage inviolate, he has no reasonable expectation of privacy.").

**7.** The Supreme Court's additional justification for its decision in *Greenwood*, 486 U.S. at 41, 108 S.Ct. at 1629—that "the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public"—does not apply here either. Given the wide use of shredders in this country, shredded documents, standing alone, would not be evidence of criminal activity.

scheme to defraud the I.R.S. *See* Wlodyka Aff. ¶ 5.

Since the exclusionary rule prohibits the use of evidence obtained as a direct result of an illegal search or seizure, *see Segura v. United States,* 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984), defendant's Motion to Suppress must be ALLOWED.