USCA1 Opinion

 

 September 22, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 91-2289 UNITED STATES OF AMERICA, Appellant, v. ALAN N. SCOTT, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Torruella and Stahl, Circuit Judges, ______________ and Hornby,* District Judge. ______________ _____________________ Mark W. Pearlstein, Assistant United States Attorney, with ___________________ whom Wayne A. Budd, United States Attorney, was on brief for ______________ appellant. Charles P. McGinty, Federal Defender Office, for appellee. __________________ ____________________ ____________________ ____________________ * Of the District of Maine, sitting by designation. TORRUELLA, Circuit Judge. Constitutionally speaking, _____________ we are concerned here with trying to determine whether there is a difference between so-called private and public garbage. The sole issue presented by this appeal is whether the Fourth Amendment prohibits the warrantless seizure and reconstruction of shredded documents found in trash bags located outside the curtilage of appellee's house. Otherwise stated, we must decide whether the shredding of private documents attaches a constitutionally recognizable privacy expectancy which follows the shredded remnants, individually and collectively, even after they become public garbage. Relying on California v. Greenwood, __________ _________ 486 U.S. 35 (1988), the district court answered in the affirmative and suppressed the evidence. We conclude that the trial court misinterpreted Greenwood and reverse its ruling. _________ I Appellee was suspected by the Internal Revenue Service ("IRS") of involvement in a scheme to defraud the United States through the filing of false income tax returns. IRS agents systematically seized and combed through garbage bags left for collection in front of appellee's house. Their search revealed numerous shredded documents reduced to 5/32 inch strips, which when painstakingly pieced together produced incriminating evidence. The agents then used this evidence as the basis for establishing probable cause to request various search warrants. The search warrants were issued and executed, and the searches garnered additional evidence used to secure appellee's 47 count -2- indictment for violation of 18 U.S.C. 287. Appellee moved to suppress the reconstructed documents as well as the evidence seized pursuant to the search warrants. Appellee argued that by shredding the documents he had manifested an objectively reasonable expectation of privacy in the shredded remnants which was protected by the Fourth Amendment, a contention that convinced the district court. Both parties to this appeal as well as the district court rely on the same case as authority for their respective positions, California v. Greenwood, supra. This seminal case __________ _________ _____ decided that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of a home, except "if respondents [have] manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." Id. at 39. ___ II We start out with the obvious proposition that what we are dealing with here is trash. More important is the fact that __ at the time the challenged evidence came into the hands of the authorites, it was public trash. That is, irrespective of ______ whether appellee intended to keep secret the contents of the documents in question by shredding them, there can be no doubt that appellee also intended to dispossess himself of those documents once they were shredded, and to place their fractured remnants in a public area accessible to unknown third parties. The shredded documents were deposited in a public place and in -3- the control of third parties, without any limitation as to their use. Trash collectors and others were at liberty to dispose of the trash in any manner they saw fit. They were also free to rummage through the garbage and explore its contents, whatever that might be. Any analysis of the expectation of privacy in the contents of the garbage must take into consideration these realities. Thus, it is appropriate to call the evidence at issue "public" trash because it was trash left for collection in a public place and over which its producer had relinquished possession. Greenwood recognizes that the search of trash left for _________ collection in a public place does not offend societal values. Id. Therefore, appellee should have been forwarned that he did ___ not have a legitimate expectation of privacy once his private garbage went into a public place because the contents of the garbage bags would not be exempt from public scrutiny. As the Court stated in Greenwood: _________ [H]aving deposited their garbage in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, (citation omitted), respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded. _________ Id. at 40-41 (emphasis supplied); see also United States v. Dunn, ___ ________ _____________ ____ 480 U.S. 294, 304 (1987) (erection of ranch type fences in an open field does not create a constitutionally protected privacy interest); United States v. Lamela, 942 F.2d 100 (1st Cir. 1991); _____________ ______ -4- United States v. Wilkinson, 926 F.2d 22, 27 (1st Cir.), cert. _____________ _________ _____ denied, 111 S. Ct. 2813 (1991) (placing trash bags within barrels ______ inside defendant's lawn not entitled to elevated "expectation of privacy" respecting the trash). Other circuits agree with this view of the Fourth Amendment. See, e.g., United States v. ___ ____ ______________ Comeaux, 955 F.2d 586, 589 (8th Cir. 1992) (warrantless search of _______ garbage within the curtilage of the home permissible because the garbage was readily accessible to the public); United States v. ______________ Hedrick, 922 F.2d 396 (7th Cir. 1991) (garbage within the _______ curtilage of a home may be searched without a warrant when accessible to the public). III In our view, a person who places trash at a curb to be disposed of or destroyed by a third person abandons it1 because "[i]mplicit in the concept of abandonment is a renunciation of any reasonable expectation of privacy in the property abandoned." United States v. Mustone, 469 F.2d 970, 972 (1st Cir. 1972). The _____________ _______ fact that the abandoned property was partially destroyed by shredding, although constituting evidence of appellee's subjective desire or hope that the contents be unintelligible to third parties, does not change the fact that it is as a result of appellee's own actions that the shredded evidence was placed in ____________________ 1 Although appellee contends that the Supreme Court rejected abandonment as a basis for deciding Greenwood, the above-cited _________ language in the Greenwood majority opinion, which specifically _________ refers to discarding inculpatory items, leads us to a different __________ conclusion. Greenwood, at 40-41. To "discard" is to "abandon, _________ relinquish, forsake." Rodale, The Synonym Finder, p. 299 (1978). __________________ -5- the public domain. Had the shredded remnants been placed in a pile on the curb in front of the house, or even more doubtfully, had an errant breeze blown shredded documents from appellee's desk into the street into the open window of a passing police car, the government would certainly have been free to seize the incriminatory evidence without a warrant, and to use its contents without limitation against appellee. United States v. Dunn, ______________ ____ supra; United States v. Oliver, 466 U.S. 170, 177 (1984) (no _____ _____________ ______ expectation of privacy in open fields and thus Fourth Amendment inapplicable); United States v. Fahey, 769 F.2d 829, 838 (1st _____________ _____ Cir. 1985) (no expectation of privacy in open mines). What we have here is a failed attempt at secrecy by reason of underestimation of police resourcefulness, not invasion of constitutionally protected privacy. There is no constitutional protection from police scrutiny as to information received from a failed attempt at secrecy. See Florida v. Riley, ___ _______ _____ 488 U.S. 445, 449-51 (warrantless surveillance by helicopter of partially covered greenhouse, valid); California v. Ciraolo, 476 __________ _______ U.S. 207, 212-15 (1986) (warrantless aerial surveillance of yard enclosed by 10 foot fence, valid); Dow Chemical Co. v. United _________________ ______ States, 476 U.S. 227, 239 (1986) (taking aerial photographs of a ______ factory from navigable airspace, valid). Appellee here thought that reducing the documents to 5/32 inch pieces made them undecipherable. It turned out he was wrong. He is in no better position than the citizen who merely tears up a document by hand and discards the pieces into the -6- sidewalk. Can there be any doubt that the police are allowed to pick up the pieces from the sidewalk for use of the contents against that person? Should the mere use of more sophisticated "higher" technology in attempting destruction of the pieces of paper grant higher constitutional protection to this failed attempt at secrecy? We think not. There is no constitutional requirement that police techniques in the detection of crime must remain stagnant while those intent on keeping their nefarious activities secret have the benefit of new knowledge. A person who prepares incriminatory documents in a secret code [or for that matter in some obscure foreign language], and thereafter blithely discards them as trash, relying on the premise or hope that they will not be deciphered [or translated] by the authorities could well be in for an unpleasant surprise if his code is "broken" by the police [or a translator is found for the abstruse language], but he cannot make a valid claim that his subjective expectation in keeping the contents private by use of the secret code [or language] was reasonable in a constitutional sense. In our view, shredding garbage and placing it in the public domain subjects it to the same risks regarding privacy, as engaging in a private conversation in public where it is subject to the possibility that it may be overheard by other persons. Both are failed attempts at maintaining privacy whose failure can only be attributed to the conscious acceptance by the actor of obvious risk factors. In the case of the conversation, the risk -7- is that conversation in a public area may be overheard by a third person. In the disposal of trash, the risk is that it may be rummaged through and deciphered once it leaves the control of the trasher. In both situations the expectation of privacy has been practically eliminated by the citizen's own action. Law enforcement officials are entitled to apply human ingenuity and scientific advances to collect freely available evidence from the public domain. The mere fact that appellant shredded his garbage before he placed it outside of his home does not create a reasonable heightened expectation of privacy under the Fourth Amendment. Appellant still discarded this garbage in an area particularly suited for public inspection and consumption. At most, appellant's actions made it likely that most third parties would decline to reconstitute the shredded remnants into a legible whole. The Fourth Amendment, however, does not protect appellant when a third party expends the effort and expense to solve the jigsaw puzzle created by shredding. The test for determining legitimacy of an expectation of privacy "is not whether the individual chooses to conceal assertedly private activity, but instead whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." California v. Ciraolo, 476 __________ _______ U.S. at 212. The ultimate question in this respect is "whether, if the particular form of [conduct] practiced by the police is permitted to go unregulated by constitutional restraints, the -8- amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society." United States v. Henderson, 940 F.2d 320, 322 _____________ _________ (8th Cir. 1991). For the reasons stated, and, we believe, following the strictures of Greenwood, such dangers are not found _________ in the present case. The decision of the district court is reversed and this case is remanded for action consistent with this opinion. Reversed and remanded. ________ ________ -9-