The PEOPLE of the State of
Colorado, Petitioner,

v.

James R. HILLMAN, Respondent.

No. 91SC591.

Supreme Court of Colorado,
En Banc.

July 20, 1992.

Rehearing Denied Aug. 24, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Paul Koehler, Asst. Atty. Gen., Appellate Section, Denver, for petitioner.

Pozner Hutt & Kaplan, P.C., Abraham V. Hutt, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

The People of the State of Colorado (the People) petition from the court of appeals opinion in *People v. Hillman,* 821 P.2d 884 (Colo.App.1991). The court of appeals reversed James Hillman's (Hillman) conviction of cultivation and possession of marijuana with the intent to distribute, based on a finding that Hillman's garbage was protected under Article II, Section 7, of the Colorado Constitution. We reverse and reinstate the judgment of conviction.

I.

On March 16, 1989, Deputy Sheriff Jerry Blue drove to 49 East 81st Place, a single-family residence in Adams County. At approximately 12:05 a.m., Officer Blue picked up five trash bags that had been placed adjacent to the intersection of the driveway and sidewalk for trash collection.[1] Four of the bags were both black and opaque. Officer Blue described the fifth bag as a large dog food bag. All of the five bags were tied.

Officer Blue took the trash bags back to the police station. At approximately 10:00 a.m., Officer Mark Nicastle examined the contents of the bags. Officer Nicastle found a credit union slip and two magazines bearing Hillman's name and address. Inside the dog food bag, Officer Nicastle found a green trash bag. Inside the green trash bag, Officer Nicastle found marijua-

---

1. Officer Blue indicated the location of the trash bags, during a hearing on a motion to suppress, by drawing a circle on a photograph labeled exhibit 1. At that time, Officer Blue could see trash cans sitting on the driveway, close to the house. The trash bags were not, however, in the trash cans when Officer Blue collected them. At the hearing, Officer Blue testified that the bags were placed out at the curbline, by the sidewalk at the very front of the property on the west side of the driveway.

na plants—some stripped of their leaves, and others in potting containers. A substantial amount of marijuana was found in several of the trash bags.[2]

Officer Nicastle sought a search warrant for 49 East 81st Place. In support of his request, Officer Nicastle gave an affidavit stating that 49 East 81st Place had been under intermittent surveillance during January and February of 1989. This surveillance revealed that numerous vehicles came to the residence. Occupants of the vehicles were seen entering the residence and staying approximately five minutes before leaving the area. Officer Nicastle also stated in the affidavit that Detective Blue collected the five bags and that Officer Nicastle discovered their contents on March 16.[3]

A search warrant for 49 East 81st Place was issued, and Officer Nicastle executed the warrant on March 16.[4] Inside 49 East 81st Place, Officer Nicastle found growing marijuana plants, harvested marijuana plants, scales, boxes of small plastic bags, and halogen lights.

Hillman was charged with cultivation and possession of marijuana with intent to distribute, among other things.[5] On November 17, 1989, the district court held a hearing on Hillman's motion to suppress the evidence seized from his garbage and subsequently from his house. At the hearing, the People stipulated that there was no probable cause to search the trash bags.[6] Finding no violation of Hillman's constitutional rights, the district court denied Hillman's motion.

On December 4, 1989, Hillman waived his right to a jury trial, and his case was tried to the district court. The district court entered a judgment of guilty with respect to the charges of cultivation and possession with intent to distribute. Hillman appealed, and the court of appeals reversed Hillman's conviction.

The court of appeals found that Hillman's garbage was protected under Article II, Section 7, of the Colorado Constitution. The court of appeals also found that the parties stipulated in the district court that the search of Hillman's home was based on probable cause provided by the search of the trash.[7] Thus, the court of appeals did not consider the People's argument that the warrant for the home search was supported by independent information providing sufficient probable cause. The court of appeals concluded that the district court erred in denying Hillman's motion to suppress the evidence seized from his garbage.

We granted certiorari to consider "whether the Colorado Constitution prohibits its warrantless examinations of garbage left on the street for disposal."[8] We find that it does not.

2. Officer Nicastle also found, among other things, rolling papers and suspected marijuana seeds in the bags.

3. The affidavit provided additional grounds, relating to events in 1987 and 1988, in support of a search warrant.

4. Officer Nicastle did testify at trial that he conducted the search on March 10, 1989. Neither party, however, disputes that the search took place on March 16.

5. Hillman was also charged with possession of psilocybin mushrooms and methamphetamine. The district court dismissed these charges as unsupported by the evidence.

6. Defense counsel stated at the hearing:

Judge, in order to get down to what we both perceive to be the true issue in the case, the Government and the defendant are stipulating there was no warrant and no probable cause

for the search of trash *cans* that you will hear about in this case, and the subsequent search of the house done pursuant to warrant was based on probable cause provided by the search of the trash *cans*.

(Emphasis added.) During the hearing, the district court acknowledged that the stipulation addressed the issue of whether there was probable cause to look in the trash *bags*.

7. The record does not reveal that the stipulation entered into was before the district court. At the hearing on the motion to suppress, counsel informed the judge that the parties stipulated to the fact that there was no probable cause to search the *trash bags*. Counsel did not stipulate that there was no probable cause to search *Hillman's house* at the hearing on the suppression motion. *See supra* n. 6.

8. The issue on which certiorari was granted was phrased as stated. We note that the trash bags were not, as the phrasing suggests, located on the street in this case.

## II.

Article II, Section 7, of the Colorado Constitution protects individuals from unreasonable searches and seizures. Colo. Const. art. II, § 7; *People v. Wright*, 804 P.2d 866, 869 (Colo.1991) (holding that article II, section 7, proscribes all unreasonable searches and seizures); *People v. Wieser*, 796 P.2d 982, 984 (Colo.1990) (holding that the Colorado Constitution protects people from unreasonable governmental intrusions into their legitimate expectations of privacy); *Hoffman v. People*, 780 P.2d 471, 473 (Colo.1989). Article II, Section 7, of the Colorado Constitution provides that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures."

" 'When a defendant challenges governmental investigative activity involving an intrusion into his privacy, *Katz* [*v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967),] requires a two-step inquiry: (1) was the intrusion a search; (2) if so, was it a reasonable search.' " *Wieser*, 796 P.2d at 984 (quoting *People v. Unruh*, 713 P.2d 370, 377 (Colo.), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986)). We have consistently begun our analysis of the constitutionality of searches and seizures by determining whether the defendant has a legitimate expectation of privacy in the area or object in question. *Wieser*, 796 P.2d at 984. We begin our analysis with this threshold inquiry because the protections of article II, section 7, do not extend to investigative activity that does not amount to a search or seizure. *See People v. Shorty*, 731 P.2d 679, 681 (Colo.1987) (discussing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Oates*, 698 P.2d 811, 816 (Colo.1985)).

■ Whether the contested activities constitute a search depends on whether the officer's "actions intruded upon an activity or area in which the defendant held a legitimate expectation of privacy." *Wieser*, 796 P.2d at 984 (citing *Oates*, 698 P.2d at 814). "A legitimate expectation of privacy is one that society is prepared to consider reasonable." *Id.* (citing *Oates*, 698 P.2d at 814; *People v. Sporleder*, 666 P.2d 135, 139 (Colo.1983)). We have not previously considered whether, under article II, section 7, society is prepared to recognize as reasonable a legitimate expectation of privacy in trash bags placed adjacent to a public sidewalk for disposal. We begin our consideration by reviewing the decisions of the state and federal courts that have addressed this question.

### A.

In 1988, the United States Supreme Court concluded that the Fourth Amendment to the United States Constitution [9] did not prohibit the warrantless search and seizure of garbage left outside the curtilage of the home for collection. *California v. Greenwood*, 486 U.S. 35, 37, 108 S.Ct. 1625, 1627, 100 L.Ed.2d 30 (1988). In *Greenwood*, a police investigator learned that a truck containing illegal drugs was scheduled to arrive at Greenwood's house. *Id.* The investigator had also received complaints of heavy vehicular traffic late

---

**9.** The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." While the Fourth Amendment and Article II, § 7, of the Colorado Constitution share a common purpose, *People v. Oates*, 698 P.2d 811, 814 (Colo.1985), we note that we are free to construe article II, § 7, "as imposing more stringent constraints on police conduct than does the Federal Constitution." *California v. Greenwood*, 486 U.S. 35, 43, 108 S.Ct. 1625, 1630, 100 L.Ed.2d 30 (1988).

We have previously construed article II, § 7, in such a fashion. *See People v. Unruh*, 713 P.2d 370, 377 (Colo.), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986) (noting that the use of electronic pen registers constitutes a search under the Colorado Constitution but not under the United States Constitution). We have also been persuaded by federal authority and have interpreted the Colorado Constitution to provide the same quantum of protection as the federal constitution. *People v. Wieser*, 796 P.2d 982, 985 (Colo.1990) (relying on *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), in concluding that a dog sniff does not constitute a search under either the federal or state constitutions).

at night in front of Greenwood's single-family residence. *Id.* The investigator asked the regular trash collector to deliver to the investigator the garbage bags that Greenwood left on the curb in front of his house. *Id.*

The investigator found items indicative of narcotics use in the bags and recited this information in an affidavit in support of a warrant to search Greenwood's house. *Id.* at 37–38, 108 S.Ct. at 1627. The warrant was issued and executed, revealing narcotics and evidence of narcotics trafficking. *Id.* at 38, 108 S.Ct. at 1627.

The United States Supreme Court stated that Greenwood's Fourth Amendment rights would only be violated if Greenwood "manifested a subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable." *Id.* at 39, 108 S.Ct. at 1628 (citing *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring)). The Court noted that Greenwood's subjective expectation that no one would inspect his opaque trash bags prior to collection did not, by itself, create a Fourth Amendment protection. *Id.* The Court instead concluded that Greenwood "exposed [his] garbage to the public sufficiently to defeat [his] claim to Fourth Amendment protection." *Id.* 486 U.S. at 40, 108 S.Ct. at 1629.

The Court reasoned that plastic garbage bags left "on or at the side of a public street" are readily accessible to members of the public. *Id.* Thus, the Court continued, individuals could not possess a reasonable expectation of privacy in inculpatory, discarded items when the items are in garbage bags that in turn are deposited " 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption.' " *Id.* at 40–41, 108 S.Ct. at 1629 (quoting *United States v. Reichter-er*, 647 F.2d 397, 399 (3d Cir.1981)).

The Court premised its conclusion that society would not accept as reasonable an expectation of privacy in trash left for collection in an area accessible to the public partly on "the unanimous rejection of similar claims by the Federal Courts of Appeals" and on the decisions of a vast majority of state appellate courts. *Greenwood*, 486 U.S. at 41, 108 S.Ct. at 1629.[10]

We note that the majority of federal and state courts considering this question in the wake of *Greenwood* have similarly concluded that society will not accept as reasonable an expectation of privacy in trash left for collection.

The United States Court of Appeals for the First Circuit, for example, upheld a warrantless search of trash bags located within barrels outside of the defendant's house but on his lawn, adjacent to the curb. *United States v. Wilkinson*, 926 F.2d 22, 27 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991). The *Wilkinson* court based its conclusion on the language in *Greenwood*, positing that society commonly knows that plastic garbage bags left on or at a public street are readily accessible to the public. 926 F.2d at 27.

The United States Court of Appeals for the Seventh Circuit found that a defendant did not possess a reasonable expectation of

---

**10.** The *Greenwood* Court cited, in support of its assertions, the following cases: *United States v. Dela Espriella*, 781 F.2d 1432 (9th Cir.1986); *United States v. O'Bryant*, 775 F.2d 1528 (11th Cir.1985); *United States v. Michaels*, 726 F.2d 1307 (8th Cir.1984); *United States v. Kramer*, 711 F.2d 789 (7th Cir.1983); *United States v. Terry*, 702 F.2d 299 (2d Cir.1983); *United States v. Reicherter*, 647 F.2d 397 (3d Cir.1981); *United States v. Vahalik*, 606 F.2d 99 (5th Cir.1979); *United States v. Crowell*, 586 F.2d 1020 (4th Cir.1978); *Magda v. Benson*, 536 F.2d 111 (6th Cir.1976); *United States v. Mustone*, 469 F.2d 970 (1st Cir.1972); *Smith v. State*, 510 P.2d 793 (Alaska 1973); *State v. Fassler*, 108 Ariz. 586, 503 P.2d 807 (1972); *State v. Schultz*, 388 So.2d 1326 (Fla.Dist.Ct.App.1980); *People v. Huddle-*ston, 38 Ill.App.3d 277, 347 N.E.2d 76 (1976); *Commonwealth v. Chappee*, 397 Mass. 508, 492 N.E.2d 719 (1986); *People v. Whotte*, 113 Mich. App. 12, 317 N.W.2d 266 (1982); *State v. Oquist*, 327 N.W.2d 587 (Minn.1982); *State v. Ronngren*, 361 N.W.2d 224 (N.D.1985); *State v. Brown*, 20 Ohio App.3d 36, 484 N.E.2d 215 (1984); *Cooks v. State*, 699 P.2d 653 (Okla.Crim.App.1985); *State v. Purvis*, 249 Or. 404, 438 P.2d 1002 (1968); *Commonwealth v. Minton*, 288 Pa.Super. 381, 432 A.2d 212 (1981); *Willis v. State*, 518 S.W.2d 247 (Tex.Crim.App.1975); *State v. Stevens*, 123 Wis.2d 303, 367 N.W.2d 788 (1985); *Croker v. State*, 477 P.2d 122 (Wyo.1970). *Greenwood*, 486 U.S. at 41–43, 108 S.Ct. at 1629–1630 (subsequent histories omitted).

privacy in his garbage where "the distance between the garbage cans and the sidewalk was relatively short, the garbage was collected by the garbage service at that location, and the garbage cans were clearly visible from the sidewalk." *United States v. Hedrick*, 922 F.2d 396, 400 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 147, 116 L.Ed.2d 113 (1991). In *Hedrick*, the defendant's garbage was placed in cans located eighteen feet west of a public sidewalk on the defendant's driveway. *Id.* at 397.

In its analysis, the *Hedrick* court considered the concept of curtilage [11] and the protection afforded sealed containers. [12] With respect to the concept of curtilage, the *Hedrick* court noted that the garbage cans were technically within the curtilage of the defendant's home because the area in which they were located was an area wherein the activity of home life often extends. *Id.* at 399. The *Hedrick* court noted, however, that the heightened expectation of privacy encompassing the curtilage of a home becomes unreasonable, however, when that area is exposed to the public. *Id.*

With respect to sealed containers, the *Hedrick* court noted that a backpack located at the side of a driveway could not be searched without a warrant because its contents are not in plain view and it has not been exposed to the public. *Id.* The *Hedrick* court observed that "[t]he obvious distinction between garbage cans and other containers is that it is 'common knowledge' that members of the public often sort through other people's garbage, and that the garbage is eventually removed by garbage collectors on a regular basis." *Id.* (citing *Greenwood*, 486 U.S. at 40, 108 S.Ct. at 1629).

Relying on a previous decision, *United States v. Kramer*, 711 F.2d 789 (7th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983), the *Hedrick* court de-

clined to adopt a bright line rule. 922 F.2d at 400. The *Hedrick* court structured its analysis on an evaluation of public accessibility and concluded that, where "garbage is readily accessible from the street or other public thoroughfares, an expectation of privacy may be objectively unreasonable because of the common practice of ... members of the public in sorting through garbage." *Id.*

Other federal courts have concluded that there is no expectation of privacy in garbage that is readily accessible to the public when placed for collection. *Pleasant v. Lovell*, 876 F.2d 787, 800 (10th Cir.1989) (noting that federal appellate courts uniformly hold that trash placed for collection in a location accessible to the public is without Fourth Amendment protection); *United States v. Trice*, 864 F.2d 1421, 1423–24 (8th Cir.1988) (finding no reasonable expectation of privacy in cans; while technically located on defendant's property, the garbage was in public view and pedestrians had easy access to it), *cert. dismissed*, 491 U.S. 914, 109 S.Ct. 3206, 105 L.Ed.2d 714 (1989); *United States v. Scott*, 776 F.Supp. 629, 632 (D.Mass.1991) (relying on *Kramer*, observing that one who takes steps reasonably calculated to avoid snooping when disposing of trash can have a reasonable expectation of privacy in that trash); *United States v. Certain Real Property Located at 987 Fisher Rd.*, 719 F.Supp. 1396, 1404–06 (E.D.Mich.1989) (holding that, on a continuum, there is a reasonable expectation of privacy in garbage bags placed against the back wall of a house, hidden from the view of ordinary pedestrians passing by the front of the house); *see also United States v. Carmona*, 858 F.2d 66, 68–69 (2d Cir.1988) (concluding that appellant had no reasonable expectation of privacy in trash seized from trash cans placed on the street curb); *United States v. Musson*, 650 F.Supp. 525, 541 (D.Colo.1986) (finding no Fourth Amend-

---

**11.** Curtilage has been defined as "a common-law concept which generally refers to the enclosed space of ground and buildings immediately surrounding a dwellinghouse." *Hoffman v. People*, 780 P.2d 471, 472 n. 3 (Colo.1989).

**12.** This court has consistently "held that the owner or possessor of a sealed container possesses a legitimate expectation of privacy in its contents." *People v. Oates*, 698 P.2d 811, 816 (Colo.1985).

ment violation when trash was seized from sidewalk in front of defendant's home).

A majority of state courts have generally found that there is no reasonable expectation of privacy in garbage when placed for collection, under both state and federal constitutional guarantees.[13] *Walls v. State,* 536 So.2d 137, 138–39 (Ala.Crim.App.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989) (search of defendant's garbage located in front of his residence did not violate a proprietary interest in it, citing *Greenwood* ); *State v. Mooney,* 218 Conn. 85, 588 A.2d 145, 157 n. 14, *cert. denied,* —— U.S. ——, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991) (observing that trash bags, while closed containers, may not carry a reasonable expectation of privacy when placed beyond the curtilage of a home for collection); *State v. Fisher,* 591 So.2d 1049, 1050 (Fla.Dist.Ct.App.1991) (concluding that defendants sufficiently exposed their garbage to the public to defeat Fourth Amendment protection when placing it in plastic cans located in front of the house on the road right-of-way); *Perkins v. State,* 197 Ga.App. 577, 398 S.E.2d 702, 704 (1990) (following *Greenwood* ); *People v. Collins,* 106 Ill.2d 237, 87 Ill.Dec. 910, 921–22, 478 N.E.2d 267, 278–79, *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985) (finding no reasonable expectation of privacy in a garbage bag left on a second floor landing of an outside stairway because such area was an openly accessible common area of the apartment building); *State v. Henderson,* 435 N.W.2d 394 (Iowa Ct.App.1988) (finding no violation of the Iowa Constitution where evidence was seized from trash bags that were tied shut and placed in metal garbage cans); *In re Forfeiture of U.S. Currency,* 181 Mich. App. 761, 450 N.W.2d 93, 94 (1989) (following *Greenwood* ); *State v. Krech,* 403 N.W.2d 634, 637–38 (Minn.1987) (concluding that defendants did not have a reasonable expectation of privacy in garbage wrapped in plastic bags and placed in cans

in back of a duplex a few feet away from an alley, where defendant's customers typically walked near the garbage en route to the back entrance); *State v. Texel,* 230 Neb. 810, 433 N.W.2d 541, 543 (1989) (holding that no reasonable expectation of privacy exists in garbage which has been made accessible to the public); *Commonwealth v. Perdue,* 387 Pa.Super. 473, 564 A.2d 489, 493 (1989), *appeal denied,* 524 Pa. 627, 574 A.2d 68 (1990) (finding no reasonable expectation of privacy in garbage left for collection subject to public inspection); *State v. Rodriguez,* 828 P.2d 636, 642 (Wash.Ct.App.1992) (finding no reasonable expectation of privacy in a garbage bag thrown on top of a community dumpster for an apartment complex); *State v. Stevens,* 123 Wis.2d 303, 367 N.W.2d 788, 797, *cert. denied,* 474 U.S. 852, 106 S.Ct. 151, 88 L.Ed.2d 125 (1985) (finding that, as trash moves farther from the home, any expectation of privacy in it is diminished).

### B.

We now determine whether, pursuant to Article II, Section 7, of the Colorado Constitution, society recognizes as reasonable an expectation of privacy in garbage left adjacent to a public sidewalk for collection. We conclude that in this case, it does not.

"Whether an asserted expectation of privacy is 'legitimate' depends on objective factors, not on the individual's subjective expectations." *People v. Juarez,* 770 P.2d 1286, 1289 (Colo.1989). We have repeatedly emphasized that the existence of such an expectation can only "be determined after examining all the facts and circumstances in each particular case." *People v. Wieser,* 796 P.2d 982 (Colo.1990) (citing *Hoffman v. People,* 780 P.2d 471, 474 (Colo.1989); and *People v. Shorty,* 731 P.2d 679, 681 (Colo. 1987)). We note that "the proponent of a motion to suppress has the burden of establishing that his own fourth amendment

---

**13.** *But see State v. Tanaka,* 67 Haw. 658, 701 P.2d 1274 (1985); *State v. Hempele,* 120 N.J. 182, 576 A.2d 793 (1990); *State v. Boland,* 115 Wash.2d 571, 800 P.2d 1112 (Wash.1990); *but cf. State v. Rodriguez,* 828 P.2d 636 (Wash.Ct. App.1992).

rights were violated." [14] *People v. Suttles*, 685 P.2d 183, 189 (Colo.1984).

Accordingly, we have not concluded that all police investigative activity impermissibly infringes on a legitimate expectation of privacy and thus does not rise to the level of a search for the purposes of article II, section 7. *Wieser*, 796 P.2d at 984–85 (holding that a canine sniff outside of a public storage locker while an officer walked a dog on a public walkway did not constitute a search for purposes of article II, section 7).

We have previously considered the concepts of curtilage and public accessibility in analyzing whether a legitimate expectation of privacy exists and is one that society is prepared to accept as legitimate. *Hoffman v. People*, 780 P.2d 471, 475 (Colo.1989). We have noted that "[t]here is no invasion of privacy in the observation of that which is plainly visible to the public." *Id.* at 474.[15] We found in *Hoffman* that defendants might not have an expectation of privacy acceptable to society where marijuana plants were located within the curtilage of the defendant's residence *but the curtilage was accessible as well as visible to the general public. Id.* at 475.

In *Hoffman*, we relied on our decision in *People v. Shorty*, 731 P.2d 679 (Colo.1987). In *Shorty*, we stated that "the fact that a search occurs within the curtilage is not dispositive if the area's public accessibility dispels any reasonable expectation of privacy." *Shorty*, 731 P.2d at 681 (citing *United States v. Smith*, 783 F.2d 648 (6th Cir. 1986)). In analyzing whether the defen-

dant had a reasonable expectation of privacy, we noted that the area in which the inculpatory evidence was found was an area open to the public—the area directly under the defendant's doormat.[16] *Id.* at 682.

The great weight of authority recognizing that individuals do not have reasonable expectations of privacy when their garbage is readily accessible to members of the public is persuasive and in accord with our analysis in *Hoffman* and *Shorty. See, e.g., United States v. Hedrick*, 922 F.2d 396 (7th Cir.1991) (holding that there is no expectation of privacy in garbage that is readily accessible from public thoroughfares because of the common practice of the public in sorting through garbage), *cert. denied*, —— U.S. ——, 112 S.Ct. 147, 116 L.Ed.2d 113 (1991); *State v. Texel*, 230 Neb. 810, 433 N.W.2d 541 (1989) (holding that no reasonable expectation of privacy exists in garbage which has been made accessible to the public).

In the present case, Hillman sought to have the evidence culled from his garbage suppressed at trial. Hillman placed the garbage bags directly adjacent to the sidewalk in front of his residence. Officer Blue collected the trash bags from that location. When collected, the trash bags were not contained in the trash cans that Officer Blue could see from the sidewalk, which were located close to Hillman's residence.[17]

We conclude that Hillman did not have a reasonable expectation of privacy in his garbage when he placed his garbage adja-

---

**14.** Hillman urges this court to follow two distinct lines of authority interpreting article II, § 7, in the contexts of numbers dialed from a telephone and of bank records, wherein we recognized expectations of privacy in transactions involving third parties. *People v. Sporleder*, 666 P.2d 135 (Colo.1983); *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980). We find that these lines of authority are distinguishable and thus do not govern the instant case because individuals do not generally know that *members of the public* might inspect or snoop in and around their telephone or bank records.

**15.** *See also People v. McClaugherty*, 193 Colo. 360, 363, 566 P.2d 361, 363 (1977) (finding no expectation of privacy in a truck which was plainly visible to the general public).

**16.** The defendant had a piece of carpet, approximately two feet square, covering a drain in front of the entrance to his apartment. *People v. Shorty*, 731 P.2d 679, 681 (Colo.1987).

**17.** In finding that Hillman did not possess a reasonable expectation of privacy in his garbage bags placed at the sidewalk for collection, we recognize that there may be circumstances in which a resident may have a reasonable expectation of privacy in garbage bags that are so positioned within the curtilage of a residence as to not be readily accessible to the public. In so finding, however, we do not premise our holding on theories of abandonment of interests in property or assumption of risk.

cent to the sidewalk, rendering it readily accessible to the public. Accordingly, the decision of the court of appeals is reversed, and the case is remanded with instructions to reinstate the judgment of conviction.

QUINN, J., dissents, and LOHR and KIRSHBAUM, JJ., join in the dissent.

Justice QUINN dissenting:

The determination of whether intrusive police activity constitutes a search within the meaning of Article II, section 7 of the Colorado Constitution depends on whether the person adversely affected by the activity has a reasonable expectation of privacy with respect to the object of the police intrusion. *People v. Unruh*, 713 P.2d 370, 377 (Colo.1986). The issue before us in this case is whether article II, section 7 of the Colorado Constitution accords a person a reasonable expectation of privacy against a warrantless police intrusion, unsupported by probable cause, into the contents of tied or otherwise secured opaque trash bags deposited at or near the curbside of the person's home for garbage collection and disposal.

The notion that a person has no reasonable expectation of privacy under such circumstances has a certain superficial attraction. This attraction, however, quickly disappears when the implications for personal privacy are considered. I venture to say that most persons would experience a great sense of personal insecurity at the prospect of police officers, without any cause whatever, opening a securely tied and opaque trash bag, the contents of which are hidden from public view, and then searching the bag to determine the activities, behavior, habits, and lifestyles of persons who deposited the trash in front of their home for disposition by a trash collector. The court's decision today condones that very practice and in so doing denigrates the Search and Seizure Clause of the Colorado Constitution. I accordingly dissent.

## I.

In *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court held that the Fourth Amendment to the United States Constitution does not provide a person with a reasonable expectation of privacy in trash contained in opaque plastic bags and placed at the curbside of one's home for collection. In so holding, the Court offered the following rationale:

It may well be that respondents did not expect that the contents of their garbage bags would become known to the police or other members of the public. An expectation of privacy does not give rise to Fourth Amendment protection, however, unless society is prepared to accept that expectation as objectively reasonable.

Here, we conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public.... Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," ... respondents could have no reasonable expectation of privacy in the inculpatory items that they discarded.

Furthermore, as we have held, the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public. Hence, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."

486 U.S. at 39–41, 108 S.Ct. at 1628–29 (footnotes and citations omitted).

In denying the suppression motion in the instant case, the trial court ruled that neither the United States nor the Colorado

Constitution afforded the defendant a reasonable expectation of privacy in opaque trash bags left at or near the curbside of his home for garbage collection and disposal. The court of appeals reached a contrary result. Acknowledging that the defendant had no reasonable expectation of privacy under the United States Supreme Court's decision in *Greenwood*, the court held that article II, section 7 of the Colorado Constitution did provide the defendant with a reasonable expectation of privacy in the trash bags. *People v. Hillman*, 821 P.2d 884 (Colo.App.1991). In reaching its conclusion, the court of appeals reasoned that the defendant did not abandon any expectation of privacy in the contents of the bags merely because he placed them at the curbside of his home for the trash collector and in an area accessible to the general public. 821 P.2d at 886–87. In my view, the court of appeals' analysis is eminently sound and reflects a realistic appraisal of a person's privacy interests emanating from the Colorado Constitution.

## II.

Article II, section 7 of the Colorado Constitution states:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

This constitutional provision, in common with the Fourth Amendment to the United States Constitution, seeks to protect "legitimate expectations of privacy from unreasonable governmental intrusion." *People v. Oates*, 698 P.2d 811, 814 (Colo.1985). In determining the scope of our state constitutional provision, we have employed the two-part test developed by Justice Harlan in his concurring opinion in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). That test requires an inquiry into whether the person aggrieved by a governmental intrusion has manifested a subjective expectation of privacy in the area, object, or activity subjected to the intrusion and whether any such subjective expectation is one which society is prepared to recognize as reasonable. *Id.* at 361, 88 S.Ct. at 516–17. The fact that this two-part test emanates from Fourth Amendment jurisprudence is not to say that we are required to engraft on our state constitution each and every decision of the United States Supreme Court construing the scope of the Fourth Amendment.

While a state court may not construe its state constitution in a manner that infringes upon federally guaranteed rights, it remains free to find in the state constitution greater protections against governmental intrusions than the protections granted by the federal constitution. It is a long-standing principle of federalism that state courts must be left "free and unfettered ... in interpreting their state constitutions." *Minnesota v. National Tea Co.*, 309 U.S. 551, 557, 60 S.Ct. 676, 679, 84 L.Ed. 920 (1941); *see Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983) (Supreme Court acknowledges that rule requiring a state court to articulate adequate and independent state constitutional basis for providing greater protection under state constitution will "provide state judges with a clearer opportunity to develop state jurisprudence unimpeded by federal interference" and yet preserve "the integrity of federal law"). The Supreme Court in *Greenwood* expressly acknowledged that state courts "may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution." *Greenwood*, 486 U.S. at 43, 108 S.Ct. at 1630. It thus follows that while we may look to the United States Supreme Court for guidance in interpreting our state constitution, we are not bound by federal precedent in resolving the scope of a state constitutional provision similar in language to the federal constitution.

In several of our prior decisions we have undertaken an independent analysis of article II, section 7 of the Colorado Constitution in order to provide Colorado citizens

with more protection against intrusions into their personal privacy than would be available under the Fourth Amendment to the United States Constitution. *E.g., Oates,* 698 P.2d 811 (rejecting United States Supreme Court precedent and concluding that placement of beeper in a chemical drum constitutes a search under Colorado Constitution); *People v. Sporleder,* 666 P.2d 135 (Colo.1983) (holding, contrary to United States Supreme Court decision, that governmental installation of pen register for home telephone intrudes on a reasonable expectation of privacy under Colorado Constitution); *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980) (adopting more protective standard of privacy under Colorado Constitution for records of bank depositor than is available under United States Supreme Court's decision). Our independent analysis of the Colorado Constitution has not been restricted to search and seizure cases. *See, e.g., Bock v. Westminster Mall, Co.,* 819 P.2d 55 (Colo.1991) (construing Free Speech Clause of Colorado Constitution in a manner more protective of speech than United States Supreme Court's First Amendment jurisprudence); *People v. Paulsen,* 198 Colo. 458, 601 P.2d 634 (1979) (rejecting United States Supreme Court's restrictive analysis of federal Double Jeopardy Clause and interpreting the Colorado counterpart in more expansive manner); *People ex rel. Juhan v. Dist. Court,* 165 Colo. 253, 439 P.2d 741 (1968) (construing Due Process Clause of Colorado Constitution in manner more protective of liberty interests of accused than required under federal due process standards). Our independent analysis of the Colorado Constitution in these cases is simply a recognition of the fact that, while the United States Constitution is the supreme law of the land, it is the responsibility of this court, when appropriate, to interpret the Colorado Constitution in a manner consistent with and more protective of the liberty interests of Colorado citizens than might otherwise be required under federal standards. Our developing state constitutional jurisprudence, therefore, "reflects our repeated recognition that the Colorado Constitution, written to

address the concerns of our own citizens and tailored to our unique regional location, is a source of protection for individual rights that is independent of and supplemental to the protection provided by the United States Constitution." *People v. Young,* 814 P.2d 834, 843 (Colo.1991) (plurality opinion).

### III.

The People concede, and rightly so, that the defendant had a subjective expectation of privacy in the contents of the trash bags placed in front of his home and searched by the police. Trash can be placed for collection in many ways. The defendant, for example, could have chosen to place trash in an open can or transparent container or could have deposited the trash in its raw form at the curbside. In fact, however, the defendant chose none of these methods, but instead went to the trouble of placing the trash in opaque bags and then tied or otherwise secured the top of the bags so that their contents were not exposed to public viewing. The defendant's action clearly manifested a subjective expectation that the contents of the bags would not be visually accessible to the public and certainly would not be subjected to a warrantless search and seizure by the police. The critical issue in this case, and the one contested by the People, is whether the defendant's subjective expectation of privacy is reasonable under the Search and Seizure Clause of the Colorado Constitution. I would hold that the defendant's privacy expectation is a manifestly reasonable one under the circumstances of this case.

"Privacy is not a discrete commodity, possessed absolutely or not at all." *Sporleder,* 666 P.2d at 141 (quoting *Smith v. Maryland,* 442 U.S. 735, 749, 99 S.Ct. 2577, 2585, 61 L.Ed.2d 220 (1979) (Marshall, J., dissenting)). On the contrary, our expectations of privacy have their source in our culture and traditions, our laws, our commonly accepted norms of social behavior, and our habits and lifestyle. Our most private traits and affairs can be reconstructed from our objects, papers, and effects, even when in the form of trash.

Indeed, almost any human activity ultimately manifests itself in some form of waste or discarded product. Justice Brennan cogently commented on this aspect of personal lives in his dissent in *Greenwood,* when he stated:

> A single bag of trash testifies eloquently to the eating, reading, and recreational habits of the person who produced it. A search of trash, like a search of the bedroom, can relate intimate details about sexual practices, health, and personal hygiene. Like rifling through desk drawers or intercepting phone calls, rummaging through trash can divulge the target's financial and professional status, political affiliations and inclinations, private thoughts, personal relationships, and romantic interests. It cannot be doubted that a sealed trash bag harbors telling evidence of the "intimate activity associated with 'sanctity of a man's home and the privacies of life.'"

486 U.S. at 50, 108 S.Ct. at 1634. In my view, the intensely personal nature of a person's trash warrants recognition of a reasonable privacy interest in the contents of opaque and tied or otherwise secured trash bags placed at the curbside of one's house for garbage collection and disposal. The same privacy interest, in my view, should attach to opaque and tied or otherwise secured trash bags left for garbage collection and disposal near one's office or workplace.

In reaching a contrary result, the majority follows the *Greenwood* analysis and holds that the defendant had no reasonable expectation of privacy in the contents of trash bags when he placed them at or near the curbside where they were readily accessible to the public. Maj. op. at 1274. People residing in an urban area, however, have little choice but to place their property at or near the curbside for collection by public or private trash collectors. The zoning regulations of Adams County, for example, prohibit persons from removing their trash from one parcel of property and disposing of the trash by depositing it upon another parcel of property or in the streets or public way. Adams County Ordinance § 4–210 (1980). Storing junk or waste outdoors also is prohibited, Adams County Ordinance § 4–220 (1980), as is leaving a trash container in front of a dwelling or within the front setback for more than a twenty-four-hour period, Adams County Ordinance § 4–23 (1980). By ordinance, all trash containers must be covered. Adams County Ordinance § 4–230 (1980). The placement of tied or otherwise secured trash bags or containers at or near the curbside for collection and disposal by an authorized trash collector arguably might signify an intent to surrender one's privacy interest in the exterior of the bags, since the exterior would thereby be exposed to public view. It requires nothing less than a quantum jump, however, to extrapolate from that same act a surrender of one's privacy expectation in the contents of the trash bags, where, as here, the contents were hidden from public view.

In concluding that the defendant had no reasonable expectation of privacy in the contents of the trash bags, the majority disavows any reliance on principles of abandonment or assumption of risk, maj. op. at 1277, n. 17, but offers no identifiable rationale for its ultimate holding. I understand the majority's unwillingness to draw upon abandonment or assumption of risk for its holding. Abandonment is the voluntary surrender or relinquishment of all right or claim to property with no intention of reclaiming the property. *See generally Black's Law Dictionary* 2 (6th ed. 1990). Although a person placing trash for collection and disposal may arguably forego a *proprietary* interest in the trash, it does not follow that the person thereby intends to surrender or renounce any and all *privacy* interest in the trash. "A justified expectation of privacy may exist as to items which have been abandoned in the property law sense, just as it is true that no expectation may exist on some occasions even though the property has not been abandoned." 1 W. LaFave, *Search and Seizure,* § 2.6(c) at 477 (1987). "[F]ar from losing their expectation of privacy in discarded possessions, people sometimes throw things out in order to *maintain*

their privacy." *State v. Hempele*, 120 N.J. 182, 576 A.2d 793, 809 (1990).

I acknowledge that one's expectation of privacy in the contents of opaque and tied or otherwise secured trash bags may be defeated when a trash collector, or some other private person not otherwise acting as a police agent, searches the trash bags and then turns the contents over to the police for examination and analysis. It would be quite another matter to conclude that the mere possibility of a fortuitous examination by a trash collector or other member of the public results in relinquishing any and all expectation of privacy with respect to a governmental search for incriminating evidence. Home and office occupants who place trash in nontransparent trash bags for collection do so for the limited purpose of waste collection and disposal and do not thereby intend to surrender their privacy interest in the trash so as to permit or authorize a police search of the bags containing the trash.

It likewise would be disingenuous if the majority were to speak of assuming the risk that a trash collector or other private person will search the trash. As a practical matter, persons living or working in an urban area have no other realistic method of disposing of their refuse. *See* Note, *California v. Greenwood: A Proposed Compromise to the Exploitation of the Objective Expectation of Privacy*, 38 Buff. L.Rev. 647, 661–667 (1990) (tracing evolution of American trash collection practices). There is a constitutionally significant difference between, on the one hand, assuming the risk that a child, a scavenger, or a trash collector will search trash bags for objects of interest and, on the other hand, assuming the risk of a police officer "scrutinizing the contents of the garbage bag for incriminating materials." *Hempele*, 576 A.2d at 805; *see* L. Chits, *In Search of a Fourth Amendment for the Twenty–First Century*, 65 Ind.L.J. 549, 573–74 (1990) (arguing that Supreme Court's reliance on risk assessment has no place in trash collection case where exposure of private information is compelled by realities of modern life). A person's awareness that leaving garbage for disposition may entail

privacy risks "hardly means that the government is constitutionally unconstrained in adding to those risks." Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349, 406 (1974). It might just as well be argued that a person's knowledge of the fact that house guests may sometimes exceed the scope of consent and invade the host's privacy interests provides a legal justification for the police to likewise invade the host's privacy interest and search the home without warrant and without probable cause. *See The Supreme Court: Leading Cases*, 102 Harv.L.Rev. 191, 198 (1988). Simply stated, the mere possibility that some member of the public or a trash collector might search one's nontransparent and tied or otherwise secured trash bags should not be the basis for authorizing similar activity by governmental officials.

In lieu of articulating some accepted legal principle to support its conclusion, the majority seems content with citing a parade of cases from other jurisdictions. Judicial precedent has its value, but it is not an inexorable command and certainly not a substitute for an independent and reasoned analysis of the nature of the constitutional interests at stake in a given case. The repetition of a judicial rule, like the repetition of a catchword, "can hold analysis in fetters for fifty years or more." B. Cardozo, *Mr. Justice Holmes*, 44 Harv.L.Rev. 682, 689 (1931). I would follow those state court decisions, admittedly few in number, that have found a reasonable expectation of privacy in trash deposited at the curbside of one's home or near one's office for garbage collection and disposal. *See People v. Krivda*, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971), *vacated and remanded*, 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), *reaff'd* 8 Cal.3d 623, 105 Cal.Rptr. 521, 504 P.2d 457, *cert. denied*, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973) (warrantless seizure of trash in front of home violates California Constitution); *State v. Tanaka*, 67 Haw. 658, 701 P.2d 1274 (1985) (society is prepared to recognize expectations of privacy in trash placed in company trash bin for collection); *State*

*v. Hempele,* 120 N.J. 182, 576 A.2d 793, 804 (1990) (reasonable expectation of privacy in contents of garbage bags left at curbside of one's home because "ordinary opaque garbage bags conceal their contents from plain view"); *State v. Boland,* 115 Wash.2d 571, 800 P.2d 1112, 1115 (1990) (individual can reasonably expect that trash collector will handle trash once it has been set out near home for collection, but this expectation does not extend to governmental intrusion). The Hawaii Supreme Court said it best when it observed that "[p]eople reasonably believe that police will not indiscriminately rummage through their trash bags to discover their personal effects." *Tanaka,* 701 P.2d at 1277.

What the defendant exposed to public view in this case was the exterior of the nontransparent trash bags, and in so doing, he disposed of his personal effects in a manner consistent with the enhanced privacy attaching to his objects, papers, and effects, albeit in the form of trash. "Surely the type of police surveillance employed [in this case] should not go unregulated, for a society in which all 'our citizens' trash cans could be made the subject of police inspection' for evidence of the more intimate aspects of their personal life upon nothing more than a whim is not 'free and open.'" 1 W. LaFave, *Search and Seizure,* § 2.6(c) at 478 (quoting *People v. Krivda,* 486 P.2d at 1269).

I would affirm the judgment of the court of appeals.

LOHR and KIRSHBAUM, JJ., join in this dissent.